Charge of Court below.

# RICHARD THOMAS ET AL. v. ANN THOMAS.

ERROR TO THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY.

Argued February 27, 1889—Decided March 18, 1889.

1. When a marriage has been regularly solemnized, it is presumed to be valid until the contrary is shown, and when that has been done by competent and satisfactory evidence that presumption, in respect of civil rights, must give way to the actual fact established.

2. While a well-founded belief in the death of her first husband, will relieve a woman marrying a second time from the pains of adultery, etc.: § 6, act of March 13, 1815, 6 Sm. L. 288, it cannot validate her second marriage, if in fact her first husband was living when it was solemnized.

3. The presumption of death arising from the absence of a person for seven years, unheard from, is not conclusive, but stands as competent proof of death only until it is successfully rebutted by competent and satisfactory evidence to the contrary.

4. Wherefore, if, at the time of a woman's second marriage, her first and undivorced husband was in fact in full life, whatever the time of his absence and her belief as to his death, she was incapable of contracting the second marriage and it was therefore void.*

Before PAXSON, C. J., STERRETT, GREEN, CLARK, and MITCHELL, JJ.

No. 297 January Term 1889, Sup. Ct.; court below, No 295 June Term 1887, C. P.

On May 4, 1887, the issue directed as noted in the report of Thomas's Appeal, ante, 640, wherein Ann Thomas was plaintiff, and Richard Thomas and others, children and heirs at law of William R. Thomas, deceased, were defendants, came on for trial before the court of Common Pleas.

The testimony submitted disclosed the facts which, in so far as they do not appear in the abstract of the commissioner's report, ante, 640, are indicated in the charge to the jury, HAND, P. J., which was as follows:

This is an issue to determine whether the plaintiff in this case, called Ann Thomas, was the legal wife of William R. Thomas at the time of his death; in other words, whether

---

*See Thomas's Appeal, preceding this case.

after his death, she was his widow. The question arose in the Orphans' Court in connection with the distribution of the property of William R. Thomas, in which the court had to decide whether this plaintiff was his widow or not. As the law permits, in order to aid the conscience of the court, we directed an issue to be tried in the Court of Common Pleas before twelve men, to determine this fact.

You are aware that questions of fact are looked upon by the law as best considered by twelve judicious men, acquainted with the affairs of common life, and of good judgment, selected from the county, who, hearing the testimony and passing upon it, are supposed to be able to judge of the facts, and come to a proper conclusion as to what is the truth under the testimony.

In view of this, we have sought the aid of a jury to determine this question: Whether this plaintiff was the widow of William R. Thomas; in other words, whether she was his lawful wife at the time he died. If she was his lawful wife, then your verdict should be for the plaintiff; if she was not his lawful wife, under the evidence, then your verdict should be for the defendants.

The plaintiff has shown that she was married to William R. Thomas on January 16, 1875, by a justice of the peace named Benjamin Jay, who gave a certificate of marriage to them. This certificate, this evidence, raises the presumption of a legal marriage, and at the outset of this case, it is to be presumed that she was the legal wife of William R. Thomas, unless there is enough evidence in the case to counteract that presumption.

It is claimed by the defendants, that at the time she contracted this marriage, she had a husband still living, by the name of David Jones, in Wales. Now, this raises two questions of fact. First: Have the defendants proved to your satisfaction that the David Jones she married forty-nine years ago, and was proved to be living some four years ago, the two persons, if I may use the expression, were the same person? You will recollect that one of the witnesses testified that she saw this woman and David Jones living together, and she afterwards saw David Jones twenty-one years afterwards, or four years ago, sitting by the roadside. She gives you to understand that it was the same person; she was fourteen

years old or thereabouts when she first saw David Jones, the husband of this woman; she didn't see him again for twenty-one years, and then she says she saw him sitting by the roadside. There are other witnesses who testified they saw David Jones in Wales at other times. I do not propose to go into the evidence, because it has been ably argued on both sides, and I prefer that you should look at the case from the evidence itself.

The question of identity, which is that which determines that the same person is existing at two different times, is a very troublesome question, and it is a question, it is proper for us to say, in regard to which witnesses may be mistaken. We do not say this now to control you, but simply to give you that sense of care in examining this case which it requires. It is an important case, because if this plaintiff did marry when she had a husband living, or when she had reason to suppose she had a husband living, then she has been guilty of a crime, under the laws of the commonwealth. You will see that it is an important question, and of course the evidence should be looked at, and scanned, and weighed, with the utmost care on the part of the jury.

You will bear in mind that it is possible that witnesses testifying to seeing the same person at two different times, a long distance apart, may be mistaken; even if they are of the same name, they may be mistaken as to their being the same person. I call your attention to this once for all, so that in examining and considering the testimony of the witnesses you may satisfy yourself as to whether they *do* give you sufficient circumstances, so that you can determine that they are testifying in regard to the same person at two different times.

It is in evidence, I think clearly established, I do not think there is any doubt about that, that this plaintiff was married to David Jones; I do not think you will have any doubt in regard to that, she does not deny it herself; she says she was married forty-nine years ago to David Jones; that she had fourteen children by him, which is possible within twenty years even without twins; she gives you the names of eleven that she had.

She says, on her side, that he left her at a certain time; that he disappeared in 1863, and that for fourteen years after that

she heard nothing from him, knew nothing of him. If you come to the conclusion that he was living, that the David Jones she married forty-nine years ago was alive at the time she contracted the second marriage in 1875, then that raises the next question. If you come to the conclusion that he was not living in 1875, that ends the defendants' case, because, if he was not living at the time she contracted the second marriage in 1875, she had the right to contract that marriage beyond a question, and it was a legal and a valid marriage. But if you come to the conclusion, after weighing all the testimony, taking into consideration that witnesses may be mistaken, that they testified to what they did see and know, and were correct in their observation, and that they did see this same Mr. Jones, after she had contracted the second marriage, in life, then the question arises : Did Ann Jones, in 1875, when she contracted the marriage with William R. Thomas, did she contract it in good faith, under circumstances in which she had the right to believe that David Jones was dead ?

The rule of law with regard to that is this : that when a man is absent from his home for a period of seven years, unheard from, under circumstances from which it would be presumed that he would be heard from if living, and remains away unheard from for a period of seven years, the law raises a presumption of his death. It is supposed that a man who has a family, has a wife and has children, and goes away, will, before the period of seven years has transpired, either communicate with them or let himself be known, in some way, to be in existence. And if he does not, from various reasons which you can think of yourselves—the fact that he has a wife, the fact that he has children, the fact that he has a home—the law presumes that he will in some way correspond with his family, and let it be known that he is alive. If he does not, and remains away for a period of seven years, under circumstances from which, if alive, he would be presumed to communicate with his family, and is not heard from, the law raises a presumption that he is dead.

These circumstances are all for you under all the facts of this case. He left her, if you believe the testimony, in 1863 ; she left and came to this country in 1873. She testifies that for fourteen years she did not hear that her husband was liv-

ing ; she testifies that she believed, at the time she contracted this marriage, that he was not living.    [Now, under all the circumstances of the case, had she the right to presume, when she married William R. Thomas, that her husband was dead under the law?    If she had, then her marriage was legal, and so far as this case is concerned, she is entitled to her civil rights as the widow of William R. Thomas, and should not be deprived of them.] [1]    We think this is enough to say with regard to this part of the case.

We have been asked to charge you upon several points by counsel on both sides, and we will take them up, and we will repeat part of what we have already stated.    The defendants ask us to charge the jury:

1. The plaintiff has not submitted sufficient evidence to raise a presumption of the death of David Jones.

Answer : We do not affirm this point ; we leave that as a question of fact for you : whether David Jones left his wife and his family; whether he was unheard from for seven years and over ; whether the circumstances were such as raise the presumption that if he was alive they would have heard from him.    If you find that he did leave his family, and was unheard from, under these circumstances, for the period of seven years, then there would be a presumption raised of his death.

2. If the jury believe that David Jones was in full life after the marriage of Ann Jones to Mr. Thomas, the marriage was void, and the verdict should be for the defendants.

Answer : We affirm this, unless you find from the evidence, that he was absent for a period of seven years, unheard from, under circumstances which raise the presumption of his death, as we have already charged you.[2]

3. A presumption of death, if proved, may be rebutted by evidence showing that the man was in full life during or after the period of seven years.

Answer : As a general proposition this is correct, and we affirm it ; but if the presumption has arisen as to the wife's subsequent marriage, that he was dead, she is not deprived of her civil rights thereby.[3]

The counsel for the plaintiff have asked us to charge you as follows :

1. That if the jury believe from the evidence that a formal

ceremonial marriage was solemnized by B. Jay, alderman of the city of Scranton, between the petitioner, Ann Thomas, and William R. Thomas on January 16, 1875, the law presumes that it was a valid marriage, and the burden of proving its invalidity on account of the David Jones matter is upon the contestants who attack it.

Answer: We affirm this point.

2. That the law presumes that said marriage was contracted in good faith and innocently on the part of the petitioner, and that presumption stands in favor of the plaintiff until it is shown by the contestants that at the time of this solemnization of said marriage the petitioner knew or had good reason to believe that Jones was yet alive then, or had known or had reason to know that fact within a period of seven years last prior to that date.

Answer: We answer that in the affirmative.[4]

3. That the fact of a man's being absent and unheard of from his family for seven years previous to January 16, 1875, raises the presumption of his death; and if petitioner in good faith married Thomas, acting on said presumption, the law protects her, and her marriage is considered valid in law, and this is not defeated by showing the mere fact of Jones being alive at the date of said marriage, nor even her discovery of Jones being alive long after the death of Thomas.

Answer: We affirm this with the qualification, that the circumstances existing at the time when he leaves are such, that if living, it would be presumed that he would be heard from. Simple absence of itself alone is not sufficient, but absence under circumstances which raise a presumption that, if living, he would be heard from; and one of these circumstances may be that a man has a wife and a large family of children with whom he has lived, and that for a long number of years, as proved in this case.

6. Proof of a former marriage to invalidate a marriage legal in form and perfectly proven must be positive, direct proof of such former marriage; and continued absence from home as shown in this case, absence of Jones from Falda for over seven years, if you believe plaintiff and her witnesses, raised a presumption of his death which of itself would sustain the marriage to William R. Thomas.

Arguments.

Answer: We answer this in the affirmative, qualifying it as we have already, if he left under circumstances under which, if living, he would be supposed to be heard from.[5]

Now, gentlemen, take up this case and render such a verdict, as under the evidence, all the evidence in the case, you think is just and legal under the charge. If you find that she was legally married to William R. Thomas, that is, if she had no husband living at that time, or if she married William R. Thomas when her husband had been absent for a period of seven years or upwards, unheard from, under circumstances under which, under our instructions, the law raises a presumption of his death, then her marriage would be legal to William R. Thomas as far as this case is concerned.

If you believe that she had a husband living when she was married, and there was no presumption of his death at all, then your verdict should be for the defendants.

It comes back to the point whether she was the widow of William R. Thomas. If she was, then she is entitled to your verdict; if she was not, then the defendants should have your verdict.

The jury returned a verdict in favor of the plaintiff. A rule for a new trial having been discharged, the defendants took this writ and assigned for error:

1. The part of the charge embraced in [ ][1]
2, 3. The answers to the defendants' points.[2][3]
4, 5. The answers to the plaintiff's points.[4][5]

*Mr. S. B. Price* (with him *Mr. C. R. Pitcher*), for the plaintiffs in error:

The charge of the court to the jury opposes the legal principle laid down in Heffner v. Heffner, 23 Pa. 104, and Kenley v. Kenley, 2 Y. 207. As a matter of law the second marriage was void.

*Mr. Everett Warren* and *Mr. D. J. M. Loop* (with them *Mr. E. N. Willard*), for the defendant in error:

1. The presumption of legal intent with which a woman has innocently married, continues after she discovers that her former husband is still alive, and the law attaches to her con-

tinuance of the second relation all the rights, obligations and disqualifications incident to a valid marriage : United States v. Hayes, 20 Fed. R. 710 ; Senser v. Bower, 1 P. & W. 450 ; and if necessary to sustain the marriage, the law in favor of innocence will presume a divorce : Blanchard v. Lambert, 43 Ia. 228 (22 Am. Rep. 245) ; Caujole v. Ferrie, 26 Barb. 117. See also Miller v. Beates, 3 S. & R. 490 ; Breiden v. Paff, 12 S. & R. 430 ; Burr v. Sim, 4 Wh. 150 ; Bradley v. Bradley, 4 Wh. 173 ; Holmes v. Johnson, 42 Pa. 159.

2. The rule is now well settled, for most judicial purposes, that the presumption of life, with respect to persons of whom no account can be given, ends at the expiration of seven years from the time they were last known to be living : Esterly's App., 109 Pa. 222 ; Best on Presumptions, §§ 140, 334, 408 ; 2 Greenl. Ev. 278 ; Innis v. Campbell, 1 R. 373 ; Whiteside's App., 23 Pa. 114. After so long a time, the law treats the presumption of the legality of the second marriage as overcoming that of the continuance of life, and requires that direct proof should be made that the former husband or wife was living at the date of second marriage : Dixon v. People, 18 Mich. 84 ; 1 Greenl. Ev., §§ 35, 278 ; Bishop, Mar. & Div., §§ 456, 458.

3. A dictum of Justice KNOX in Heffner v. Heffner, 23 Pa. 104 ; and the case of Kenley v. Kenley, 2 Y. 207, is all that is offered by defendants to sustain a view of the law contrary to that laid down by the court below in this case. The former case is not ruled by the dictum of Justice KNOX, and it was there admitted that the first husband was living at the time of the second marriage. The latter case was a proceeding in divorce, and the first husband was known by libellant to be in full health at the time the suit was instituted. In this case the jury found that David Jones, the first husband of Ann Thomas, was dead at the time of her second marriage. Her good faith in the second marriage was also established by the verdict, and her civil rights as the widow of the deceased secured.

OPINION, MR. JUSTICE STERRETT :

After directing who shall be, respectively, plaintiff and defendants in this issue, the order of the Orphans' Court further

provides that it shall "be tried in the following manner: The plaintiff, Ann Thomas, shall simply put in evidence the certificate of her marriage, issued by Benjamin Jay, alderman, and then the affirmative of the issue shall be upon the defendants, with the burden of proof to show that Ann Thomas was not the lawful wife of William R. Thomas, the decedent, at the time of his death; the plaintiff affirming that she was the lawful wife of William R. Thomas, and the defendants affirming that she was not his lawful wife." The considerations that moved the court to send this issue to the Common Pleas for trial sufficiently appear in the opinion just filed in Thomas's Appeal, No. 180 of this term, but they have little, if anything, to do with the consideration of the questions presented by this record. Those questions relate solely to the instructions of the learned president of the Common Pleas as to the effect of the evidence before the jury, and the character of the proof necessary to overcome the prima facie case that was made for the plaintiff below by the introduction of Alderman Jay's certificate of her marriage to William R. Thomas on January 16, 1875. It is not even alleged that there was any error in the admission or rejection of evidence.

To rebut the case thus made in her favor, and to maintain the issue on their part, the defendants below introduced evidence tending to prove that about forty years before her alleged marriage to William R. Thomas, plaintiff was married to David Jones, at Llaneatog, Wales; that for many years thereafter they lived together as husband and wife at Aberdare and at Falda, in same country, and that at the time of her marriage to Thomas, and even after his decease, David Jones, her first husband, was in full life. In response to this, the plaintiff, in turn, introduced evidence tending to show that Jones left Wales and had been unheard of by her for more than seven years before her marriage to Thomas, and that prior thereto, as well as thereafter, she had reason to believe and did believe that Jones was dead. As to all these allegations of fact, on the part of plaintiff as well as defendants, in the issue, there was more or less conflict of testimony.

According to the terms of the issue, the laboring oar was on the defendants; and, in view of the evidence on which they relied, they requested the court, in their second point, to

charge: " If the jury believe that David Jones was in full life after the marriage of Ann Jones to Mr. Thomas, the marriage was void and the verdict should be for the defendants."

Assuming the jury were satisfied that plaintiff was first married to Jones, and in the absence of any evidence that she was legally divorced from him, the proposition was correct, and with that qualification it should have heen affirmed. Instead of that, the learned judge said: " We affirm this, unless you find from the evidence that he was absent for a period of seven years, unheard from, and under circumstances which raise the presumption of his death, as we have already charged you." He had already charged, as complained of in the first specification of error: " Now, under all the circumstances of the case, had she the right to presume when she married William R. Thomas, that her husband was dead under the law ? If she had, then her marriage was legal, and, so far as this case is concerned, she is entitled to her civil rights as the widow of William R. Thomas, and should not be deprived of them."

The vice of this instruction is that it gives the presumption referred to, all the force and effect of actual death; in other words, it makes the presumption of death conclusive proof of the fact, and therefore irrebuttable. But, the presumption of death, arising from absence, etc., stands as competent proof of death only until it is successfully rebutted by competent and satisfactory evidence. If that was successfully done in this case, and the jury were fully satisfied that at the date of plaintiff's marriage to Thomas, in January, 1875, she had a husband in full life, viz.: David Jones, from whom she had never been divorced, that fact, without more, rendered the second marriage null and void. It matters not that she had reason to believe and did believe that he was then dead. If, in truth and in fact, he was then in full life, she was incapable of contracting the second marriage, and it was therefore void: Kenley v. Kenley, 2 Y. 207 ; Heffner v. Heffner, 23 Pa. 104. In the first case the court said " though the circumstances attending this case might exempt the defendant from the pains of bigamy, yet her first husband being in full life, and their marriage not annulled by any competent jurisdiction, the marriage was ipso facto void and null." In the latter it was said : " A man having a wife in full life is utterly powerless to make a valid contract of marriage, and his attempt to do so is utterly nugatory."

While a well-founded belief in the death of her first husband (if in fact she had one) would have relieved plaintiff from the penalty for adultery, etc., it could not validate the second marriage, if, in fact, her first husband was living when it was solemnized. The act of March 13, 1815, § 6, provides : " If any husband or wife, upon any false rumor, in appearance well founded, of the death of the other (when such other has been absent for the space of two whole years), hath married, or shall marry again, he or she shall not be liable to the pains of adultery ; but it shall be in the election of the party remaining unmarried, at his or her return, to insist to have his or her former marriage dissolved," etc. The presumption, especially in criminal proceedings, is always in favor of innocence. When a marriage has been regularly solemnized, it is presumed to be valid until the contrary is shown. When that has been done by competent and satisfactory evidence the presumption of fact, in civil cases, must give way to the actual fact thus established.

For reasons above suggested, the first and second specifications of error are sustained.

In defendants' third point the court was requested to charge : " A presumption of death, if proved, may be rebutted by evidence showing that the man was in full life during or after the period of seven years." The learned judge qualified his affirmance of this, as a general proposition, by saying : " But, if the presumption has arisen, as to the wife's subsequent marriage, that he was dead, she is not deprived of her civil rights thereby." This qualification was erroneous, and in its application to the case at bar was practically a refusal of the point.

The two remaining specifications present, in a modified form, substantially the same questions that have already been considered. In view of what has been said, it is unnecessary to notice either of them specially. They are both sustained.

Judgment reversed, and a venire facias de novo awarded.