## Pierce *v.* Pierce, Appellant.

Argued October 1, 1946. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

*Fred B. Trescher,* with him *Kunkle, Trescher & Snyder,* for appellant.

*Carroll Caruthers*, with him *Frank A. Rugh*, for appellee.

OPINION BY MR. JUSTICE PATTERSON, November 8, 1946:

Joseph E. Pierce, also known as Joseph O. Pearce, appellee, filed this Bill in Equity against Mamie Pierce, also known as Mabel M. Martin, appellant, for partition of real estate situate in Hempfield Township, Westmoreland County, held in their names as husband and wife. This appeal is from the decree of the court below holding that no valid common law marriage had been proved and directing partition.

Where a relationship, meretricious at its inception, is shown to have continued for eight years, a formal marriage ceremony is then performed—void, however, for the reason that the spouse of the woman was living and not divorced, and, subsequent thereto, this disability is removed by a divorce secured by said spouse, is cohabitation and reputation for 17 years thereafter legally sufficient to establish a common law marriage where the terms of the putative marriage contract do not contain words *in præsenti?* (See last par. p. 181)

Mamie Pierce, appellant, was married to Roy Martin on July 6, 1912, in Erie, Pennsylvania. Three children were born of this marriage. In the latter part of 1917, Joseph E. Pierce, appellee, then 17 years of age, began boarding at the home of the Martins. Appellant at this time was 29 years of age. Shortly thereafter, appellant and appellee began a meretricious relationship. Roy Martin left appellant about August 1, 1918, and his whereabouts remained unknown to either party for many years. On or about August 3, 1918, appellant and appellee moved to New Alexandria, Westmoreland County, where they lived together.

The parties entered a formal marriage contract before the Clerk of the Orphans' Court of Fayette County, on

November 9, 1925. She falsely stated at that time that she had been married only once and that her husband had died in 1923. She had no information regarding his death, nor had there been any false rumor of his death. The only evidence in that regard was that she had been interested in having a support order complied with and had inquired of the Erie police whether they knew the whereabouts of Roy Martin. She was informed they did not. Subsequent to said ceremony, the parties to this action resided at divers places in Westmoreland County; purchased the tract of land in question on October 2, 1936, as husband and wife, and for the entire period each held out the other as his or her spouse.

Appellee testified that in July, 1944, while on a trip to Erie, he learned that Roy Martin was living and not divorced at the time of the ceremony of 1925, and that said Martin had obtained an Ohio divorce on April 5, 1927. Pierce thereupon consulted his attorney, left appellant, and filed this Bill in Equity for partition and for an accounting. Appellant testified that on March 23, 1931, Pierce returned home from a trip to Erie about 1:30 A.M. and informed her that he had learned of the invalidity of their marriage of 1925, and thereupon said, "I will take you for my wife," to which she replied, "If that is the case, I will take you for my husband." The court disbelieved her testimony regarding the conversation, accepted appellee's denial thereof, concluded that no valid common law marriage had been effected, and directed partition, but refused an accounting.

Appellant contends that (1) the presumption of a continued illicit relationship is rebutted by the admitted facts; (2) the intended marriage was reaffirmed and declared after her disability had been removed by divorce; and (3) the court erred in disbelieving the testimony regarding the ceremony of March 23, 1931. Appellee contends that the relationship having been meretricious at its inception was presumed to continue and

said presumption could not be overcome by proof of cohabitation and reputation where the putative common law ceremony was legally insufficient to establish a valid marriage contract.

Cohabitation and reputation of marriage are insufficient to create a lawful marriage where either party is legally incompetent to marry: *Clark's Estate,* 173 Pa. 451, 455; *Thomas v. Thomas,* 124 Pa. 646, 655. Cohabitation and reputation are not marriage. They are merely circumstances from which a marriage may be presumed. In *McGrath's Estate,* 319 Pa. 309, 315, 179 A. 599, 602, it was said: "It is settled in this State, that, if other proof is not available, 'the marriage may be established,' as was said in *Craig's Est.,* supra, [273 Pa. 530], at page 533, [117 A. 221, 222], 'by proof of reputation and cohabitation, declarations and conduct of the parties and such other circumstances as usually accompany the marriage relation: Richard v. Brehm, 73 Pa. 140, [13 Am. Rep. 733].' This is another method, complete in itself, of proving marriage. If the proof under this rule is sufficient to convince the fact-finding judge that the parties were married, no other proof is needed, *though the presumption of marriage that such evidence might raise must give way to the positive proof of the party that no contract* was made." (Italics supplied). See *Fitzpatrick v. Miller,* 129 Pa. Superior Ct. 324, 327, 196 A. 83, 85.

A meretricious relationship once established, is presumed to continue. ". . . it can be converted into a valid and legal marriage, after the obstacle to their marriage is removed, only by the consent of both parties, established by clear and convincing evidence": *Wagner v. Wagner,* 152 Pa. Superior Ct. 4, 8, 30 A. 2d 659, 661. See *McLaughlin's Estate,* 314 Pa. 574, 578, 172 A. 107, 109; *Wolford v. Whiterock Quarries, Inc., et al.,* 144 Pa. Superior Ct. 577, 579, 20 A. 2d 887, 889. The relation, being meretricious in its inception, no presumption of marriage is raised from proof of its continuance: *McLaughlin's Estate,* supra.

Where a common law marriage is asserted, any presumption which might otherwise be indulged in, becomes immaterial when the one asserting the validity of the relationship relies upon a putative contract which is legally insufficient to establish the fact of marriage. See *McDevitt's Estate,* 280 Pa. 50, 52, 124 A. 294, 295; *Bisbing's Estate,* 266 Pa. 529, 531, 109 A. 670, 671. In *Murdock's Estate,* 92 Pa. Superior Ct. 275, 277, the court said: ". . . . if she herself proves that no valid marriage contract was actually entered into between them, evidence as to cohabitation and reputation goes for nothing . . ."

In *Estate of Mary F. Hughes,* 98 Pa. Superior Ct. 328, appellant asserted that he was the surviving husband of decedent and claimed an intestate share of her estate. He had been married to one Mary Rooney in 1893, and lived with her until she left him in 1911. From 1911 to 1915, he lived in the home of Mary Freeley, decedent. In March, 1919, while his wife was still living, decedent and he went through a marriage ceremony before a magistrate. In 1921, he secured a divorce from his first wife. There was no proof of a subsequent legal marriage. Mr. Justice LINN, then Judge of the Superior Court, said (p. 333): ". . . their relations were meretricious and illegal for many years prior to March, 1922; and the legal consequence of their conduct prior to that date continues to taint their conduct and cannot be put aside after that date without evidence showing a change of relation thereafter. The law declares that the meretricious quality of their relation continues until removed by marriage. There was no marriage. It cannot be inferred from the cohabitation and reputation in this case . . ."

The burden of establishing a lawful marriage after the disability has been removed, was upon the appellant. "The change may be established by circumstantial evidence, but the circumstances must be such as to exclude

the presumption that the original relation continued, and to prove satisfactorily that it was changed to matrimonial union by mutual consent": *Edwards v. Enterprise Manufacturing Co.*, 283 Pa. 420, 421, 129 A. 449, 450. Proof of reputation and cohabitation could not establish a marriage; nor, in the absence of evidence regarding a marriage contract, is it sufficient to warrant a presumption of marital relations. The presumption that the meretricious relations continued could be rebutted only by proof of a valid legal marriage. The evidence was insufficient in this regard.

The learned Chancellor, before whom the parties testified, and who could best determine the truthfulness of the witnesses, did not believe appellant's testimony regarding the alleged common law ceremony. His findings, approved by the court *en banc,* will be disturbed only when arbitrarily and capriciously made: *In re: Stevenson's Estate,* 272 Pa. 291, 296, 116 A. 162, 163. The record does not disclose that the rejection of her testimony as "somewhat fantastic" was erroneous. There is, therefore, only evidence of reputation and cohabitation. The burden, which the law imposes upon appellant, of establishing a change in the relations,—a marriage by mutual consent, has not been sustained. The proof is insufficient to rebut the presumption of continuance of the original relationship.

Assuming appellant's testimony, regarding their conversation in 1931, to be credible, she has, nevertheless, failed to establish a common law marriage contract. The words used were in *futuro,* not in *præsenti: Craig's Estate,* 273 Pa. 530, 533, 117 A. 221, 222; *Hantz v. Sealy,* 6 Binney 405, 409; *Wolford v. Whiterock Quarries, Inc., et al.,* supra, 579; *Baker v. Mitchell, et al.,* 143 Pa. Superior Ct. 50, 54, 17 A. 2d 738; *Fitzpatrick v. Miller,* supra; *Cline's Estate,* 128 Pa. Superior Ct. 309, 311, 194 A. 222; *Estate of Robert Murdock,* 92 Pa. Superior Ct. 275.

Appellant relies upon *Estate of John M. Holben, Deceased,* 93 Pa. Superior Ct. 472, and *Thewlis's Estate,* 217 Pa. 307, 66 A. 519. In the former case, the parties were formally married while the husband of the putative wife was living. There was no proof that he had secured a divorce, at that time. Several years later, however, he did remarry. Claimant's testimony established that said husband died several years after the marriage in question. No new marriage contract was entered into after the death of said husband. The court below held that there was no common law marriage. The Superior Court reversed, holding that subsequent cohabitation and reputation constituted sufficient evidence to rebut the presumption of a continued meretricious relation. The majority opinion is based upon numerous presumptions of innocence, and a presumption that the husband had secured a divorce prior to the putative marriage. Judge KELLER, in a dissenting opinion, stated: "No other case in Pennsylvania, which I have been able to find, holds that a wedding ceremony, which was void because one of the parties was already married at the time it was performed, became a legal marriage, after the removal of the original bar or obstacle, by mere cohabitation and reputation and without a new contract of marriage, *where the parties knew of the invalidity of their original contract of marriage* and of the removal of the bar to their being legally married." This later statement represents the true rule in Pennsylvania and is controlling here. We disapprove of the holding of the majority opinion in that case.

The opinion in *Thewlis's Estate,* supra, may readily be distinguished for the reason that there was no abortive attempt to prove a common law marriage contract. This factual difference eliminates the necessity for further consideration of that case.

The decree of the court below is affirmed. Costs to be paid by appellant.