Opinion by
Hirt, J.,
In this proceeding, brought under the Act of June 24, 1939, P. L. 872, §733, 18 PS §4733, the lower court, on a finding that relatrix is the common law wife of the respondent, ordered him to pay |25 per week for her support and that of their minor child. Respondent’s paternity of the child is clearly established. The serious question is whether there was a marriage at common law.
The existence of a valid marriage must be proved. But there is no merit in respondent’s contention that the court, in a proceeding for support under the above Act, lacks jurisdiction to determine whether the essential elements of a marriage at common law have been established. That has never been a question solely for a jury. Finders of facts, in proceedings generally, have jurisdiction to determine the question of the existence of a common law marriage whenever material to the issue e.g., Wilbert v. Com. Sec. Reserve Acc. et al., 143 Pa. Superior Ct. 37, 17 A. 2d 732, where the Workmen’s Compensation Board found the controlling fact; Krystkiewicz's Estate, 310 Pa. 298, 165 A. 230, a proceeding in the Orphans’ Court in which an award to a *71 claimant was sustained on a finding that he was the common law husband of the decedent.
It is admitted that a meretricious relationship between the parties began as early as May 1945. Relatrix then rented a building in Devon which she, over a period of years, sublet to a number of State Police Officers for use as a barracks. She supplied both board and lodging to them there, at a profit to her, and she continued to live on the premises with the respondent. Although the meretricious nature of the relationship, from its inception, remained unchanged, they began to hold themselves out as husband and wife in May 1945. Relatrix now relies on a marriage contract allegedly entered into with respondent on October 27, 1945. She testified that then “there was an agreement between us, Charlie just said he would take me as his wife, and that’s all there was to it. . . . We were on the studio couch and Charlie said, ‘Blanche, I will take you for my wife,’ and I said, ‘I will take you for my husband’ ”. That is the language of the alleged marriage contract in its entirety, according to relatrix. It was denied by respondent that the agreement ever took place.
Since the relatrix asserted a contract of marriage the evidence as to cohabitation and reputation goes for nothing if the agreement is legally insufficient to establish the fact of marriage at common law. And the relationship of the parties, admittedly meretricious up to the time of the alleged agreement, was presumed to continue so, and could be converted into a valid and legal marriage only by the consent of both parties established by clear and convincing evidence. Pierce v. Pierce, 355 Pa. 175, 49 A. 2d 346; Rosenberger Estate, 362 Pa. 153, 65 A. 2d 377. “This court has frequently held that the mere fact that a man and woman live together, even though for a long period of years, will not sustain an order for support under the Act in the absence of a legal marriage”: Com. ex rel. Allison v. Allison, 151 Pa. Supe *72 rior Ct. 369, 30 A. 2d 365. And it is settled law that where evidence of reputation and cohabitation is insufficient to support a presumption of marriage, a common law marriage must be evidenced by words in the present tense uttered with a view and for the purpose of establishing the immediate relation of husband and wife. Murdock’s Estate, 92 Pa. Superior Ct. 275; Baker v. Mitchell et al., 143 Pa. Superior Ct. 50, 17 A. 2d 738; Pierce v. Pierce, supra; Krystkiewicz’s Estate, supra.
The words of the agreement here are in the future tense, but it is the contention of relatrix that they Avere uttered by both parties with the intention of entering into a contract of marriage, then and there. She contends that their subsequent acts indicate conclusively that, despite their language, they were dealing in terms of the present; and that the construction Avhieh they themselves put on the agreement renders inoperative the principle that “Words in the future tense, that is, agreeing to enter into the marriage relation sometime in the future, even if folloAved by cohabitation are not sufficient in this State to establish a common law marriage” : Baker v. Mitchell, supra. Conceivably, the circumstances and conduct of the parties, in a proper case, indicating their intent, may be sufficient to establish a marriage in terms of the present at common law regardless of the literal implication of their language. But the fairness of defendant’s conduct is not an issue here (cf. Com. ex rel. Allison v. Allison, supra) and from a consideration of all of the evidence Ave are constrained to conclude that a valid marriage has not been established.
According to relatrix’s testimony both she and the respondent told everyone that they Avere married beginning in May 1945, when she took over the business in Devon and respondent came to live Avith her there. She testified also: “Before we were married I changed my name” taking that of the respondent. They passed as *73 husband and wife long before the alleged marriage agreement while their relations admittedly were meretricious. For that reason the fact that they continued to hold themselves out as husband and wife after the alleged agreement is unavailing as proof of a change in their relationship to that of a valid marriage status.
On February 2, 1946, the parties opened a joint savings account with Berwyn National Bant in the names of “Blanche Gill DeMarco or Charles DeMarco”. Each made deposits; the balance of $1,602.65 to their credit on March 14, 1947, was then withdrawn and divided between them. Title to this account was in them as joint tenants and not by entireties as husband and wife, and it is of no significance on the present issue. In April 1946 respondent brought his mother and sister to relatrix’s rooming house in Devon where they lived for ten months and were maintained there by relatrix without reimbursement. Neither relatrix’s testimony that she was introduced to them by the respondent as his wife, nor their testimony that respondent never had married, has any probative value as to a marriage contract between the parties. When the lease for the Devon property expired, a renewal lease for an additional term was entered into on March 31, 1947 with “Charles DeMarco and H. Blanche Gill, his wife” as lessees. Both of them signed the lease at the request of the owner’s agent who assumed that they were married. Under the circumstances respondent hardly could have refused to comply without jeopardizing a renewal of the lease. In October 1947 respondent bought and paid for a policy of insurance on relatrix’s automobile registered in her name as “Halcie B. Gill DeMarco”. But that fact has no bearing on the issue since respondent used the automobile in his business and benefited by the coverage.
The declarations of the parties, under circumstances where there was a penalty for misrepresentation, are significant. Following the date of the alleged marriage *74 each filed separate tax returns for a number of years. Respondent filed as a single man and named only his mother and father as his dependents; and the record with his employer, as a basis for tax withholding, was to the same effect. On the other hand, the only inference from relatrix’s testimony as to her income tax return is that she filed as a single woman.
Moreover, two letters written by her to respondent after he left her are not the letters of a wife to a husband, as this excerpt from one of them dated January 14,1949, will indicate: “I cant do without you and you know it I will get you one way or another if it is 20 years from now, I will not give up hope as you see I havent. You know I could never see you with any other girl. I will tell the girl what my intentions are and if she marries you she and your mother will pay the concequences. I just couldent let you be married to any one else that is all. . . .”
Relatrix has not sustained the burden of proving a legal marriage. At most the testimony demonstrates that she was content with the fiction of an honest relationship since she could not get more.
Order reversed without prejudice to the relatrix in a proper proceeding for the support of the child.