## Stauffer Estate.

Argued January 7, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and ARNOLD, JJ.

*Emanuel H. Klein,* for appellants.

*Harry Goldbacher,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, February 13, 1953:

The appeals are from a definitive decree of distribution of the orphans' court awarding to Marie B. Ducellier, as surviving spouse of Russell R. Stauffer, who died intestate, her share of the estate under the intestate law. Claimant remarried after decedent's death. She claimed as surviving spouse under an alleged common law marriage, following an illicit or meretricious relation with decedent. Decedent's only other next of kin are two sisters, the appellants.

An experienced and able auditor heard the testimony and carefully weighed all the evidence. He made comprehensive findings of fact, accompanied by sound and accurate conclusions of law. His findings and conclusions were affirmed by the court in banc.

We deem it superfluous to recite in detail the factual situation. Having read and considered the testimony, we appreciate the reluctance and hesitancy of the auditor to accept as true the *oral testimony* of

claimant concerning the existence of the alleged marriage. There can be no serious question that the relationship in its inception was illicit and meretricious. Between February and July 1934 the parties lived together alone in an apartment over decedent's garage. The auditor or the court below would have been gullible indeed had they found that no illicit and meretricious relation existed. As the relationship was illicit and meretricious in its inception, it is *presumed* to have continued so until a change in such relationship was affirmatively established. In the *Estate of Mary F. Hughes*, 98 Pa. Superior Ct. 328, where the relations between the parties were illicit and meretricious at the beginning, Judge LINN (later Justice LINN of this Court) said, p. 332: "The legal consequence, the presumption, the inference to be made from that evidence, is, that their relations thereafter remained as they were before—meretricious, and condemned by the law. To the inquiry—how long that legal consequence continued? the law answers—until changed by conduct that the law regards as sufficient proof of the establishment of a lawful relation, i.e. marriage. Appellant does not contend that there was a ceremonial marriage after his divorce; nor does he contend that the parties married 'by words in the present tense, uttered with a view and for the purpose of establishing the relation of husband and wife': Murdock's Est., 92 Pa. Superior Ct. 275, 279. Yet the burden of proof was on him: Davis Est., 204 Pa. 602." This Court has cited that case with approval: *Pierce v. Pierce*, 355 Pa. 175, 49 A. 2d 346; *Rosenberger Estate*, 362 Pa. 153, 65 A. 2d 377.

With this heavy burden placed upon her, claimant sought to establish a change in relationship by proof of the existence of a common law marriage created by an oral contract between her and decedent. She testi-

fied that the contract was created by words in the present tense. She said the words were spoken on the steps of the court house on July 18, 1934, as they were leaving that building after obtaining a marriage license. There were no witnesses to the alleged verbal marriage contract. The auditor's belief in the truth of claimant's testimony, *unsupported*, would depend upon the auditor's belief as to her credibility. In *Buradus v. Gen. Cement Prod. Co.*, 159 Pa. Superior Ct. 501, 48 A. 2d 883 (which we affirmed PER CURIAM in 356 Pa. 349, 52 A. 2d 205), Judge HIRT said, p. 503: "There has been a growing judicial impatience of the invitation to perjury in cases depending for recovery on marriage at common law and a progressive change in judicial view requiring higher degrees of proof where such marriages are asserted."

He also said, p. 504: "Marriage without civil or religious ceremony (perhaps mistakenly accepted here, as the then common law of England, Cf. Bishop on Marriage, Divorce and Separation, §390 et seq., In re: Roberts' Estate (Wyo.) 133 P. 2d 492) is still valid, under the common law of Pennsylvania. And although, with the ready means of transportation everywhere available, common-law marriage may be an anachronism in the present day—born as it was of the exigencies of pioneer life—we have not presumed to question it as an institution sanctioned by our law."

In *Fiedler v. National Tube Company*, 161 Pa. Superior Ct. 155, 53 A. 2d 821, it is said, p. 157: "Common law marriages are valid in Pennsylvania and neither the method of contracting them nor their validity has been changed by statute. Buradus v. General Cement Products Co. et al., 159 Pa. Superior Ct. 501, 48 A. 2d 883, affirmed 356 Pa. 349, 52 A. 2d 205. Marriage in Pennsylvania is a civil contract and does not require any particular form of solemnization be-

fore officers of church or state, but is entered into by words in the present tense, uttered with a view and for the purpose of establishing the relation of husband and wife. Balanti v. Stineman Coal & Coke Co., 131 Pa. Superior Ct. 344, 200 A. 236; Wagner v. Wagner, 152 Pa. Superior Ct. 4, 30 A. 2d 659. The contract of marriage may be proved like other contracts; proof in a specified way or by a designated quantum is not required. McGrath's Estate, 319 Pa. 309, 179 A. 599."

President Judge KELLER aptly encompassed the present problem in *Baker v. Mitchell*, 143 Pa. Superior Ct. 50, 17 A. 2d 738, when he said, p. 54: "The law of Pennsylvania *recognizes* common law marriages. But they are a fruitful source of perjury and fraud, and, in consequence, they are to be *tolerated, not encouraged;* the professed contract should be examined with great scrutiny, and it should plainly appear that there was an actual agreement entered into, then and there, to form the legal relation of husband and wife: Stevenson's Est., [272 Pa. 291], pp. 296 and 301."

It is extremely dubious whether or not under the testimony in this case the *unsupported* testimony of claimant of the existence of a common law marriage would have been approved. We readily understand how the auditor "reluctantly and hesitantly" concluded to accept as true this portion of claimant's testimony, but only after reviewing supporting evidence.

In substantiation of claimant's testimony, it was shown that the parties took title to real estate as husband and wife as tenants by the entireties in 1945 and in the following year, again as husband and wife, conveyed other land to a purchaser; in 1946, as husband and wife, in settlement of the estate of decedent's father, by two separate deeds, they conveyed their interest in one piece of land to one appellant and another piece of land to the other appellant; decedent mailed

postal cards addressed to claimant as his wife; six other postal cards were mailed to them as Mr. and Mrs. Russell F. Stauffer and another card was mailed to claimant, addressed as "Mrs. Russell R. Stauffer"; Clara Koch, one of appellants, and sister of decedent, was a registrar and she registered claimant as a voter in the name of Marie B. Stauffer; claimant was registered for social security in that name; in that name, claimant took out a life insurance policy on her life naming decedent, as husband, as beneficiary; that following the alleged verbal marriage contract, the parties gave a "wedding reception or kettle band party" at which decedent introduced claimant as his wife and where claimant introduced certain of her friends to decedent as her husband; the parties lived together for thirteen years after the alleged marriage and there is considerable testimony of reputation and cohabitation. There are various contradictions to some of the foregoing evidence, but such are the findings of fact by the auditor, which the court in banc has approved.

No citation of authority need be given for the familiar and well established principle that findings of fact, approved by the court in banc, will not be disturbed except for clear error.

The decree is affirmed. Costs to be paid by the estate of decedent.