## Gower Estate.

Argued April 21, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Ronald J. Mishkin,* with him *Russell L. Mervine,* and *Mervine, Brown & Newman,* for appellant.

*John A. Hiscott,* with him *Shull, Kitson & Lee,* and *Williams & Williams,* for appellee.

OPINION BY MR. JUSTICE BARBIERI, December 20, 1971:

On November 27, 1962 William Gulick, appellant, filed an election to take against the will of Ada Gower (Gulick), deceased, claiming as decedent's surviving spouse. On January 8, 1963, he filed a claim for the family exemption. The auditor appointed by the Court of Common Pleas of Monroe County, Orphans' Court Division, recommended that appellant's claims be denied. The lower court confirmed the auditor's recommendation. Appellant filed exceptions to the auditor's report on June 30, 1964 which were denied by the lower court on March 20, 1970. This appeal followed.

The record reveals that appellant and Ada Gower began living together in 1930. At that time Ada Gower was married to one Arthur Wilson Gower. The Gowers were divorced in 1932. Appellant and Ada Gower continued living together until her death in 1962. On May 29, 1942 they both appeared before the Selective Service Board at Easton and signed and swore to the following:

"May 25, 1942

"For the purpose of establishing marriage status for consideration of Selective Service Board No. 1 and thereby request and secure deferred classification based

on a claim for dependents in order to avoid conscription for military service, I, William Charles Gulick, hereby say and declare that I consider and regard Ada Gower Gulick, nee Ada Gower, as my wife and as such I have heretofore, likewise *do now,* and will forever hereafter, assume all of her living expenses and provide her with the necessities of life, as well as *endow her with full rights and all privileges of a wife,* together with a wife's legal right to, and interest in, whatsoever property I am now possessed of or should hereafter acquire.

"Be it known, and I hereby further declare that I have always regarded Ada Gower Gulick (Ada Gower), as my (common-law) wife ever since and during our entire co-habitation began in 1930 and which has continued without interruption to date, pursuant to an understanding by and between us that *we are* in all respects to be husband and wife. . . .

"I, Ada Gower Gulick, nee Ada Gower, have read the declaration and statements of my husband, William Charles Gulick, as herein contained, which are made for the purpose of establishing marriage status before, and for the consideration of, the Selective Service Board, and I hereby subscribe to his statements in every particular and respect." (Emphasis added).

Appellant contends that this writing was sufficient to prove the existence of a common law marriage. We agree. We believe that this particular case is *sui generis* and that it is difficult to derive much guidance from the particular facts of cases previously decided by this Court. The principles upon which we are to decide each case are clear, however. A common law marriage is established by words in the present tense, uttered with the view and for the purpose of establishing the relation of husband and wife. *Stauffer Estate,* 372 Pa. 537, 94 A. 2d 726 (1953). The courts have been

frequently called upon to make distinctions between the valid *verba in praesenti* and the invalid *verba de futuro*. See, e.g., *Blecher Estate,* 381 Pa. 138, 112 A. 2d 129 (1955), and cases cited therein.

The language in the case before us is clearly *in praesenti*: "I . . . declare that I consider and regard Ada Gower Gulick . . . as my wife . . . *do now* . . . endow her with full rights and privileges of a wife . . ."; and, as to decedent: "I . . . have read the declaration and statements of my husband . . . made for the purpose of establishing marriage status . . . and I hereby subscribe to his statements in every particular and respect."

Not only is it clear that the words used are in the present tense, it is also clear from the writing that the parties intended that, at least on that day "now, and . . . forever hereafter," they were openly accepting each other as man and wife. Obviously, the "intention of the parties may not be disregarded." *Brown v. Nolen,* 298 Pa. 384, 148 A. 498 (1930). Both appellant and the decedent stated that the purpose of the writing was for "establishing marriage status."

We do not believe that the appellant's "establishing marriage . . . in order to avoid conscription for military service" renders invalid his otherwise valid common law marriage. The reason or motive underlying the decision to marry is not relevant to a finding of the *intention* to marry.

In short, we believe that the writing is sufficiently probative to overcome the presumption that once a meretricious relationship is entered into it continues until the obstacle to a valid marriage is removed, and a valid marriage is established by clear and convincing evidence. Cf. *Pierce v. Pierce,* 355 Pa. 175, 49 A. 2d 346 (1946).

558

Here we have in written form the clear agreement of marriage, albeit common law, at a time when there was no obstacle or impediment to a legal marriage of any kind. Having decided that the writing is sufficient to establish proof of a common law marriage, we need not consider whether the proof of cohabitation and reputation either corroborates or establishes independently the validity of the common law marriage.

Decree reversed. Costs on the estate.