557 A.2d 772

**Doris CANUTE, Appellee,**

v.

**Jacob G. CANUTE, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 31, 1989.

Filed April 17, 1989.

Kathy W. Morrison, Harrisburg, for appellant.

Todd A. Hoover, Harrisburg, for appellee.

Before WIEAND, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from a June 14, 1988, order of the Dauphin County Court of Common Pleas directing appellant/husband to pay appellee/wife spousal support in the amount of $130.00 per week plus $20.00 per week on arrears effective March 7, 1988. For the reasons herein set forth, we reverse.

The pertinent facts are as follows: Appellant and appellee started their romantic relationship on March 29, 1983, after they met at the Grantville, Pennsylvania, Holiday Inn. On April 14, 1983, appellant moved in with appellee. Throughout their relationship, appellee knew appellant was married to Sandra Canute.

Appellant began divorce proceedings from Sandra Canute in 1983, but the divorce was not finalized until January 18, 1985. Although appellee knew appellant was already married, she made arrangements for the couple to be married on May 6, 1983, in Roanoke, Virginia. Thereafter, the couple first separated on or about December, 1987, and separated for the final time on February 6, 1988.

A complaint for spousal support was filed by appellee on or about March 16, 1988. Following a support conference, a recommended order for spousal support was entered on April 14, 1988, in the amount of $150.00 per week, plus $10.00 per week on arrears. On April 28, 1988, appellant filed an appeal to the trial court. The Honorable Clarance C. Morrison held a de novo hearing on June 14, 1988, thereafter entering the order in question. See Pa.R.C.P. 1910.11. On July 13, 1988, appellant timely filed a notice of appeal to this Court.

Appellant raises three issues for our consideration. First, he argues the trial court erred in determining that a common law marriage existed between himself and appellee.[1] Secondly, appellant contends that neither the divorce

1. Our ruling on this issue renders it unnecessary for the Court to discuss the following two issues.

code nor marriage law provides a statutory sanction of marriage when the parties entered into a civil marriage fully aware of a legal impediment to the marriage. Appellant's final argument is that the June 14, 1988, order of spousal support is excessive.

In the case of *In Manfredi Estate*, 399 Pa. 285, 159 A.2d 697 (1960), our Supreme Court discussed statutory and common law marriages. The Court noted that: "[m]arriage in Pennsylvania is a civil contract by which a man and a woman take each other for husband and wife. There are two kinds of marriage: (1) ceremonial; and (2) common law. A ceremonial marriage is a wedding or marriage performed by a religious or civil authority with the usual or customary ceremony or formalities. It is too often forgotten that a common law marriage is a marriage by the express agreement of the parties without ceremony, and almost invariably without a witness, *by words*—not in futuro or in postea, but—*in praesenti*, uttered with a view and for the purpose of establishing the relationship of husband and wife." *Id.* 159 A.2d 697 (1960) (emphasis in original) (citations omitted).

Cohabitation of a man and woman, both of whom are capable of contracting marriage, and a reputation as husband and wife in their community together raise a presumption that the parties have contracted marriage. *In re Estate of Garges*, 474 Pa. 237, 378 A.2d 307 (1977). See *e.g., Thorndell v. Morrison*, 25 Pa. 326 (1855); *Pierce v. Pierce*, 355 Pa. 175, 49 A.2d 346 (1946). An essential element for a common law marriage is intent to establish a marital relationship. Evidence of intent may consist of words uttered in the present tense for the purpose of establishing the relation of husband and wife. *Steadman v. Turner*, 357 Pa.Super. 361, 516 A.2d 21 (1986) allocatur denied in 515 Pa. 624, 531 A.2d 431. See also, *Gower Estate*, 445 Pa. 554, 284 A.2d 742 (1971); *Commonwealth v. Sullivan*, 484 Pa. 130, 398 A.2d 978 (1979). Cohabitation and reputation of marriage do not alone create a marriage. They are only mere circumstances from which a marriage

may be inferred and rebutted by other facts and circumstances. See *Pierce,* 355 Pa. 175, 49 A.2d 346 (1946); *Wagners Estate,* 398 Pa. 531, 159 A.2d 495 (1960). See also, *In re Estate of Stauffer,* 504 Pa. 626, 476 A.2d 354 (1984).

 Instantly, an impediment to the marriage existed when the relationship between the parties began. At the time the couple took their marriage vows on May 6, 1983, in a Virginia civil ceremony, both individuals knew appellant was still legally married to Sandra Canute. The relationship was therefore meretricious because both partners were aware of the impediment. *Pierce,* 355 Pa. 175, 49 A.2d 346 (1946); *Garges,* 474 Pa. 237, 378 A.2d 307 (1977). Where the relationship began while at least one of the parties was married to a third person, the courts will presume that the parties continued to live together unmarried even after the impediment to their marriage had been removed unless thereafter they reaffirm their marriage agreement. *Id.* 378 A.2d at 309, quoting *Pierce,* supra. Furthermore, where a relationship is meretricious at its inception, there must be clear evidence of a change in status to rebut the presumption that the non-marriage continued after the impediment to the marriage was removed. *Turner,* 357 Pa.Super. 361, 516 A.2d 21 (1986). See also, *Pierce,* supra; *Garges,* supra.

 In the case *sub judice,* the evidence established at the June 14, 1988, hearing revealed that, from the time of their "non-legal marriage" in 1983, the couple shared a residence, income, expenses, a checking account and sexual relations until their final separation during February, 1988. However, appellee's evidence of cohabitation and reputation of marriage after removal of the impediment is unavailing to rebut the presumption that the non-marriage continued. For us to find a common law marriage existed, there must be clear evidence of an intent to enter into a marriage agreement *after* appellant was divorced from Sandra Canute in 1985. *Estate of Gavula,* 490 Pa. 535, 417 A.2d 168 (1980). In other words, had the couple established a marriage agreement following appellant's 1985 divorce, this

Court would be hard pressed to conclude that under the same factual circumstances a common law marriage did not exist.

Appellant's admission that he and appellee lived together as man and wife (N.T. 6/14/88 p. 17) is not the essential proof of an agreement to enter into a legal relationship of marriage at the present time. See *e.g., Rosenberger Estate,* 362 Pa. 153, 65 A.2d 377 (1949). (A marriage contract was found where the man gave the woman a ring and said, "Now you have the ring and you are my wife," whereupon the woman replied, "That is fine. I love it." The words are in form statements that a condition of marriage exists, but in context they indicate an agreement to marry.) Instantly, amidst the evidence of cohabitation and reputation, we find no evidence of an agreement of marriage between the parties following the removal of the impediment in 1985.

After a thorough perusal of the record, we conclude that trial court committed clear error in its finding that a common law marriage existed between appellant and appellee. As such, the ruling of the lower court is reversed, and the June 14, 1988, support order is vacated.

Order vacated. Complaint for support dismissed.