Kathleen A. PERROTTI, Appellant,

v.

Larry T. MEREDITH, Appellee.

Superior Court of Pennsylvania.

Argued Dec. 7, 2004.
Filed Feb. 14, 2005.

---

John F. Pyfer, Jr., Lancaster, for appellant.

Leslie D. Jacobson, Harrisburg, for appellee.

BEFORE: BENDER, PANELLA and MONTEMURO *, JJ.

OPINION BY BENDER, J.:

¶ 1 Kathleen A. Perrotti (Kathleen) appeals from the May 6, 2004 order that denied her request for spousal support and/or alimony *pendente lite* (SS/APL) based upon a conclusion that a common law marriage did not exist between Kathleen and Larry T. Meredith (Larry). We affirm.

¶ 2 On July 10, 2003, in addition to filing a complaint in divorce, Kathleen filed a complaint for support, wherein she requested that she be awarded SS/APL from Larry. Her support complaint included the notation that she and Larry entered into a common law marriage in April of 1998 in Dauphin County, Pennsylvania. Following a support conference, a domestic relations hearing officer recommended

* Retired Justice assigned to the Superior Court.

a denial of support "on the basis that Pennsylvania no longer recognized common law marriage." Trial Court Opinion (T.C.O.), 9/14/04, at 1. The court signed the order recommended by the hearing officer, and Kathleen requested *de novo* review.

¶ 3 In its decision, concluding that no common law marriage existed between the parties and, thus, no SS/APL was due, the trial court set forth the following recitation of the evidence presented at the April 7, 2004, *de novo* hearing:

The parties, both mortgage brokers, met sometime prior to 1998. In 1997, [Larry] proposed to [Kathleen] but she turned him down. On April 27, 1998, the parties moved in to a home together and it is on this date that [Kathleen] considered herself to have married. She testified that "we moved in to our home and after all of the movers and everybody had come and helped us, then he carried me across the threshold and made a comment about my weight and we continued on as being husband and wife." [Larry] denied that he had ever intended to marry her at that time and described their cohabitation "as a prelude to marriage." The parties lived together continuously until they separated June 27, 2003.

[Kathleen] presented documentary evidence where [Larry] identified himself as her spouse, including signing a designation of beneficiary form in 2001 related to death benefits payable through her employer, and on a vehicle title application in 1999. [Kathleen] also presented other documents where she identified herself as married to [Larry], including on a 2001 employment enrollment form by which she applied for benefits for [Larry] as her spouse, school forms in which she identified [Larry] as her

child's stepparent as well as a health club membership form on which she identified [Larry's] child as her own child. Additionally, [Kathleen] presented a property settlement agreement draft prepared for [Larry] by his attorney in June 2003. The proposed agreement identified the parties as husband and wife.

[Larry] explained that his designation as [Kathleen's] spouse on the application for vehicle title was done solely at [Kathleen's] insistence in order for her to be able to drive the vehicle. He explained that his designation as spouse on other documents was because [Kathleen] handled all the paperwork and he trusted her when she told him to sign things. He also opined that he was without bifocals when he signed the designation of beneficiary form and couldn't read it.

[Larry] presented documentary evidence where [Kathleen] identified herself as not married, including filing her 1998 through 2002 federal income tax returns in the capacity of head of household (as opposed to married filing jointly). Additionally, [Larry] produced a deed for a Florida property that [Kathleen] sold in November 2002 in which she is identified as a single woman, as well as joint applications for life insurance in which both parities are listed as the other's primary beneficiary in the capacity of fiancé and fiancée respectively. [Kathleen] explained that her accountant had told her to file her tax return as head of household and that with regard to the Florida property, she was permitted under Florida law to sell her property in the same capacity as she purchased it, which was as a single person.

Finally, [Kathleen] presented three mutual friends who testified that [Larry] referred to [Kathleen] as his wife and that he never denied being married to her. [Larry] presented four friends/professional colleagues from the mortgage brokerage industry who testified that they knew [Kathleen] and [Larry] in the capacity of boyfriend and girlfriend, or as engaged.

T.C.O. at 1–3 (citations to the record and footnotes omitted).

¶ 4 Based upon the above findings and with reliance on *Staudenmayer v. Staudenmayer,* 552 Pa. 253, 714 A.2d 1016 (1998), the court issued its order denying Kathleen's complaint for support, concluding that Kathleen had not carried her burden of proof and that, therefore, no common law marriage existed. Order, 5/6/04.[1]

¶ 5 Kathleen now appeals to this Court, and raises the following issue for our review:

> Whether the Trial Court committed an abuse of discretion or error in application of the existing Pennsylvania appellate case law in determining that the parties had not entered into a valid common law marriage on or about April 27, 1998?

Kathleen's brief at 4.

 ¶ 6 When considering appeals from support orders, "[o]ur standard of review of a trial court's order allows us to determine only whether the trial court committed an error of law or abused its

---

**1.** We note that our legislature has amended the Domestic Relations Code, providing for the abolition of common law marriages in Pennsylvania. Section 1103 of that act now states that "[n]o common-law marriage contracted after January 1, 2005, shall be valid. Nothing in this part shall be deemed or taken to render any common-law marriage otherwise lawful and contracted on or before January 1, 2005 invalid." 23 Pa.C.S. § 1103. This amendment in no way impacts the case presently before us, in that Kathleen claims that the alleged marriage took place in April of 1998.

discretion." *Stackhouse v. Stackhouse,* 862 A.2d 102, 104 (Pa.Super.2004). "An abuse of discretion entails a misapplication of the law or a manifestly unreasonable judgment in light of the record." *Id.* (quoting *Lobaugh v. Lobaugh,* 753 A.2d 834, 835 (Pa.Super.2000)). Moreover, we note that:

> A common law marriage can only be created by an exchange of words in the present tense, spoken with the specific purpose that the legal relationship of husband and wife is created by such exchange. The burden to prove a common law marriage rests on the proponent of the marriage and such a claim must be reviewed with great scrutiny.

*Bell v. Ferraro,* 849 A.2d 1233, 1235 (Pa.Super.2004) (citing *Staudenmayer, supra* ).

■ ¶ 7 In her appeal, Kathleen argues that the trial court did not give proper weight to the ceremonial conduct of the parties, *i.e.,* when Larry carried her over the threshold of their new home, and to the documentary and testimonial evidence presented. Specifically, Kathleen contends that she presented sufficient evidence that the parties lived together, held themselves out as husband and wife, and executed documents together in circumstances similar to those in *Estate of Gower,* 445 Pa. 554, 284 A.2d 742 (1971), a case in which the Supreme Court held that, premised on a document signed by both parties, a common law marriage had existed.

¶ 8 In *Gower,* the parties (Ada and William) lived together before and after Ada's divorce in 1932 from her first husband, and they continued to do so until Ada's death in 1962, at which time William filed to take against Ada's will. The record contained a document signed and sworn to by both Ada and William before the Selective Service Board in 1942 for the purpose of establishing marital status so that William could secure deferred status to avoid military service. The court culled the following language from the document, finding it to be in the present tense:

> The language in the case before us is clearly *in praesenti:* "I ... declare that I consider and regard Ada Gower Gulick ... as my wife ... *do now* ... endow her with full rights and privileges of a wife ..."; and, as to decedent: "I ... have read the declaration and statements of my husband ... made for the purpose of establishing marriage status ... and I hereby subscribe to his statements in every particular and respect."

*Id.* at 743 (emphasis in original). Recognizing that the words in the document were "in the present tense," the *Gower* court concluded that on the day the parties executed the document they indicated that they "were openly accepting each other as man and wife." *Id.* Since we have no such document in this case, we conclude that Kathleen's reliance on *Gower* is misplaced.

¶ 9 Rather, we find that the *Bell* decision is factually most similar to the matter presently before us. In *Bell,* the parties both testified and presented documentation to support their respective position as to whether a common law marriage existed. One of the documents that the appellant, the proponent of the existence of a common law marriage, submitted into evidence was entitled "Affidavit of Common Law Marriage," which was signed by both parties.[2] However, the appellee testified

---

**2.** Also, in addition to testifying that the requisite *verba in praesenti* language was exchanged and that friends and relatives were told of the marriage, the appellant in *Bell* submitted correspondence that referred to the parties as being married. However, the appellee, or opponent of the marriage, presented documents executed after the "affidavit" was signed, namely, deeds and tax returns, that evidenced each parties' single status.

that the "affidavit" was "executed solely to enable him to add [the appellant] to his health insurance...." *Bell*, 849 A.2d at 1235. Relying on 42 Pa.C.S. § 6105(a), which "allows the contents of a notarized document to be admitted as proof of the facts stated therein, [but] also recognizes that a litigant 'may be permitted to contradict by other evidence any such certificate,'" *id.*, this Court noted that the trial court determined that the appellee's explanation for signing the "affidavit" was more credible. Thus, the *Bell* court held the "affidavit" was not dispositive, *i.e.*, the probative evidence contained in the "affidavit" was rebutted by the appellee's testimony.

¶ 10 We further take note of the Supreme Court's discussion in *Staudenmayer*, as did the trial court, wherein the court discussed the type of evidence needed to prove the existence of a common law marriage where testimonial evidence about the marriage contract is available, as opposed to a situation where such evidence is unavailable. Following its explanation "that a common law marriage does not come into existence unless the parties uttered the *verba in praesenti*," *Staudenmayer*, 714 A.2d at 1021, the court explained that:

> We have allowed, as a remedial measure, a rebuttable presumption in favor of a common law marriage based on sufficient proof of cohabitation and reputation of marriage where the parties are otherwise disabled from testifying regarding *verba in praesenti*. However, where the parties are available to testify regarding *verba in praesenti*, the burden rests with the party claiming a common law marriage to produce clear and convincing evidence of the exchange of words in the present tense spoken with the purpose of establishing the relationship of husband and wife, in other words, the marriage contract. In those situations, the rebuttable presumption in favor of a common law marriage upon sufficient proof of constant cohabitation

and reputation for marriage, does not arise.

> By requiring proof of *verba in praesenti* where both parties are able to testify, we do not discount the relevance of evidence of constant cohabitation and reputation of marriage. When faced with contradictory testimony regarding *verba in praesenti*, the party claiming a common law marriage may introduce evidence of constant cohabitation and reputation of marriage in support of his or her claim. We merely hold that if a putative spouse who is able to testify and fails to prove, by clear and convincing evidence, the establishment of the marriage contract through the exchange of *verba in praesenti*, then that party has not met its "heavy" burden to prove a common law marriage, since he or she does not enjoy any presumption based on evidence of constant cohabitation and reputation of marriage. *See Pierce v. Pierce*, 355 Pa. 175, 181, 49 A.2d 346, 349 (1946) ("[p]roof of reputation and cohabitation could not establish marriage; nor, in the absence of evidence regarding a marriage contract, is it sufficient to warrant a presumption of marital relations").

*Id.*

¶ 11 Based on this recitation of the law, it is evident that because both parties were available to testify as to the *verba in praesenti*, Kathleen could not rely primarily upon cohabitation and reputation evidence to support her contention that a common law marriage existed, *i.e.*, she was not "entitled to any rebuttable presumption in favor of a common law marriage through evidence of cohabitation and reputation of marriage." *Id.* at 1022. On the contrary, Kathleen was initially required to prove that the parties exchanged words in the present tense with the purpose of creating a husband and wife relationship. We must

agree with the trial court that Kathleen's testimony in this regard:

> was insufficient on its face to prove [the existence of a] common law marriage. Entirely absent from the event described by [Kathleen] was the requisite present verbal exchange between the parties of their intent to be husband and wife. *Staudenmayer, supra.* In fact, there was no verbal exchange at all as described by [Kathleen] and as such, her claim that she was married at common law failed.

T.C.O. at 6.

¶ 12 Having failed to sustain the initial burden of proving the *verba in praesenti* requirement, we conclude that Kathleen's other evidence did not "rehabilitate [her] failure to prove *verba in praesenti,* no matter how weighty or compelling that evidence may [have] be[en]." *Id.* at 7. Accordingly, we conclude that the trial court did not err by determining that no common law marriage existed. Therefore, we affirm the trial court's order denying the complaint for support.

¶ 13 Order affirmed.