J-A24014-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ELBA FLORENTINO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NAIPAUL RAMLOCHAN | : | No. 32 EDA 2024 |

Appeal from the Decree Entered November 27, 2023
In the Court of Common Pleas of Monroe County Civil Division at No(s):
002482-CV-2019

BEFORE:  LAZARUS, P.J., KING, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.:               **FILED FEBRUARY 11, 2025**

Elba Florentino (Wife) appeals from the divorce decree, entered in the Court of Common Pleas of Monroe County, following the court's order denying in part and dismissing in part Wife's and Naipaul Ramlochan's (Husband's) exceptions to the master's report and recommendation.  After our review, we affirm based on the opinions authored by the Honorable C. Daniel Higgins, Jr.

The parties were married on September 10, 2015.  They separated on December 10, 2019.  Wife filed a complaint in divorce on April 1, 2019, and Husband filed an answer and counterclaim on February 26, 2020.

In March 2020, Husband filed a petition seeking exclusive possession of the marital residence and an order to list the residence for sale.  Husband had purchased the residence prior to the marriage and it remained titled solely in his name.  Wife filed an answer to Husband's petition.  Thereafter, the parties agreed to resolve the matter by permitting Wife a limited opportunity to

purchase the marital residence. On October 21, 2020, the trial court entered an order giving Wife the right to purchase the marital residence for $230,000.00 on or before December 1, 2020. In the event that Wife did not effectuate the purchase, the court would order Husband be given exclusive possession of the home and promptly list the house for sale.

On November 9, 2020, Wife filed a petition to amend the divorce complaint to add a claim for common law marriage, alleging that she and Husband had entered into a common law marriage in New York as of December 20, 1992, on her seventeenth birthday. The trial court held a hearing. Following the hearing, the court determined that Wife failed to meet her burden of proof to establish a common law marriage. *See* Order, 7/19/21; Trial Court Opinion, 7/19/21, at 4-6.

Wife was unable to obtain to obtain financing and, therefore, she failed to purchase the marital residence by December 1, 2020, in accordance with the court's October 21, 2020 order.

On January 26, 2022, Husband requested the appointment of a divorce master. Following a hearing, the divorce master issued a report and recommendation on January 12, 2023. Both parties filed exceptions, which the court denied or dismissed, and the court entered a divorce decree adopting the master's recommendations. Wife filed this timely appeal, and both Wife and the trial court have complied with Pa.R.A.P. 1925.

Wife raises two issues for our review:

1. Did the trial court err and/or abuse its discretion in failing to find that the parties were validly considered to be married in a common law marriage in 1994?[1]

2. Did the trial court abuse its discretion or commit an error of law in accepting the Master's recommendation that included his undervaluation of the Husband's 401[k] Pension with Verizon, thereby denying [Wife] equitable distribution on the true value of the asset, which is not a fair and equitable distribution?

Appellant's Brief, at 3.

First, Wife argues she and Husband entered into a common law marriage on December 20, 1992, despite the fact that in her complaint in divorce Wife averred the parties were married in 2015. *See* Complaint, 4/1/19, at ¶ 4 ("The Plaintiff and the Defendant were married on September 10, **2015**, in Reeders, Pennsylvania.") (emphasis added).[2] Notably, at the master's hearing on December 27, 2022, Wife testified on direct examination that the date of the marriage was September 15, 2015, that she and Husband were married in Monroe County, and that she and Husband separated on December 10, 2019. *See* N.T. Master's Hearing, 12/27/22, at 9-10. Additionally, there is no dispute that, prior to marrying Wife, and during the time that Wife claims she and Husband were in a common law marriage, Husband was married in

_____

[1] Wife's statement of issues and argument asserts 1994 as the year a common law marriage was established, however in her testimony she gave the December 20, 1992 date. *See* Hearing on Wife's Petition to Amend Complaint, 3/5/21, at 11-12. Based on our disposition, we find this discrepancy immaterial.

[2] In his Answer and Counterclaim, Husband admitted to this averment. *See* Defendant's Answer to Plaintiff's Complaint in Divorce and Defendant's Counterclaim in Divorce, 2/26/20, at ¶ 4.

New York City on December 11, 2001, to Yanniris A. Fortuna, and was divorced on November 19, 2003. Further, Wife acknowledged that Husband's words to her on her seventeenth birthday were a "proposal," and, thus, did not establish the relationship of husband and wife. *See Staudenmayer v. Staudenmayer*, 714 A.2d 1016, 1020-21 (Pa. 1998) (party alleging common law marriage "must show by clear and convincing evidence that the couple came to an `express agreement' – or *verba in praesenti* – `uttered with a view and for the purpose of establishing' the marital relationship.") (citation omitted). *See also id.* at 1020 (common law marriage "can only be created by an exchange of words in the present tense, spoken with the specific purpose that the legal relationship of [a marital partnership] is created by that" exchange).[3]

After our review of the certified record on appeal, we conclude that the evidence supports the trial court's determination that Wife failed to establish a common law marriage by clear and convincing evidence. *Staudenmayer*, *supra*; *Perrotti v. Meredith*, 868 A.2d 1240, 1244 (Pa. Super. 2005). We, therefore, find no merit to Wife's claim of common law marriage.

_____

[3] Effective January 24, 2005, the General Assembly amended the Domestic Relations Code to abolish common law marriage, but the legislature provided that common law marriages lawfully entered into on or before January 1, 2005 would continue to be recognized. *See* 23 Pa.C.S.A. § 1103, as amended by Act of Nov. 23, 2004, P.L. 954, No. 144.

In her second issue, Wife claims the court erred in accepting the master's recommendation of the valuation of Husband's 401(k). We find no error.

It is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. *Sternlicht v. Sternlicht*, 822 A.2d 732, 742 n.8 (Pa. Super. 2003). Further, "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Moran v. Moran*, 839 A.2d 1091, 1095 (Pa. Super. 2003) (citing *Simeone v. Simeone*, 551 A.2d 219, 225 (Pa. Super. 1988). *See also Childress v. Bogosian*, 12 A.3d 448, 455–56 (Pa. Super. 2011).

Here, the only objective evidence introduced to prove the value of the 401(k) account was the statement attached to Husband's pretrial memorandum, which showed the balance of the account as $65,014.74 at the date of separation. *See* Husband's Objection to Wife's Pretrial Statement, 4/20/22, Exhibit C (statement period 1/10/15-12/04/19). Wife failed to present any evidence indicating otherwise. *See* Master's Hearing, *supra* at 12 (Wife testifying she has no documentation to indicate value of Husband's 401(k)). Wife seeks to have us reweigh and reassess the evidence. That is not our function.

The trial court's determination is free from legal error and is supported by the evidence. We, therefore, affirm the divorce decree based on the opinions authored by Judge Higgins. *See* Trial Court Opinion, 7/19/21, at 3-7; Pa.R.A.P. 1925(a) Opinion, 2/26/24, at 7-8. We direct the parties to attach a copy of those opinions in the event of further proceedings.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/11/2025

Filed 1/15/2024 10:50:00 AM Superior Court Eastern District
32 EDA 2024

IN THE COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

| | | |
|---|---|---|
| ELBA FLORENTINO, | : | No. 2482 CV 2019 |
| | : | No. 318 DR 2019 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NAIPAUL RAMLOCHAN, | : | |
| | : | DIVORCE EXCEPTIONS |
| Defendant. | : | |

ORDER

AND NOW, this 21st day of November, 2023, after consideration of the record, the hearing transcript, the Master's Report and Recommendation, and the exceptions and arguments in this matter, IT IS ORDERED:

1. Wife's first exception is hereby **DISMISSED AS MOOT.**

2. Wife's remaining exceptions 2-12 are **DENIED**

3. Husband's first exception and fifth exception are each hereby **DISMISSED AS MOOT.**

4. Husband's remaining exceptions 2-4 are **DENIED.**

5. The Master's Report and Recommendation is adopted as an Order of the Court and the parties are directed to carry out the terms thereof.

BY THE COURT:

C. DANIEL HIGGINS, JR., Judge

cc  Scott M. Amori, Esq., Master
Andrew J. Katsock, III, Esq.
Brett J. Riegel, Esq.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

ELBA FLORENTINO,                       :        No. 2482-CV-2019
                                       :        No. 318 DR 2019
                        Plaintiff,     :
v.                                     :        IN DIVORCE
                                       :
NAIPAUL RAMLOCHAN,                     :
                                       :
                        Defendant.     :

## O R D E R

**AND NOW** this 19th day of July, 2021, following a hearing in which both parties appeared and were represented by counsel, **IT IS ORDERED** the Petition of Plaintiff for Leave to Amend Her Complaint in Divorce is **DENIED**.

BY THE COURT:

C. DANIEL HIGGINS, JR., Judge

cc: Andrew Katsock, Esq.
    Brett Riegel, Esq.

7

# IN THE COURT OF COMMON PLEAS OF MONROE COUNTY
## FORTY-THIRD JUDICIAL DISTRICT
## COMMONWEALTH OF PENNSYLVANIA

ELBA FLORENTINO,

          Plaintiff,

vs.

NAIPAUL RAMLOCHAN,

          Defendant.

NO. 2482-CV-2019
NO. 318 DR 2019

## ORDER

**AND NOW**, this 10th day of March, 2021, following an evidentiary hearing on the Plaintiff's Emergency Petition for Special Relief, and the Court determining that Plaintiff has not shown good cause existing to grant the relief requested,

**IT IS ORDERED** the Emergency Petition for Special Relief is **DENIED**.

**IT IS FURTHER ORDERED** Plaintiff shall be permitted to retrieve her clothing and other personal property and effects from the residence owned by Defendant located at 308 Appenzell Terrace, Stroudsburg, Pennsylvania. Plaintiff's retrieval shall be upon a single occasion for a maximum period of one (1) hour and shall be scheduled by providing Defendant or Defendant's attorney at least forty eight (48) hours advance notice of the time and date of such personal property retrieval. Plaintiff shall perform this retrieval on or before March 31, 2021, unless extended by mutual agreement of the parties.

**BY THE COURT:**

_____
C. DANIEL HIGGINS, JR., Judge

cc: Brett J. Riegel, Esq.
     Andrew J. Katsock, III, Esq.

IN THE COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

ELBA FLORENTINO,          :

                           :       No. 2482 CV 2019
                           :       No. 318 DR 2019

       Plaintiff,       :

v.                       :

NAIPAUL RAMLOCHAN,    :

                           :       DIVORCE EXCEPTIONS
       Defendant.    :

## OPINION

This matter is before the Court on exceptions to the divorce master's report and recommendation filed by Plaintiff Elba Florentino (Wife) and separate exceptions also filed by Defendant, Naipaul Ramlochan (Husband).

By way of background, Wife and Husband were married on September 15, 2015, in Monroe County, Pennsylvania. A complaint in divorce was filed by Wife against Husband on April 1, 2019. Their date of separation was December 10, 2019, as agreed by the parties at the time of the divorce master's hearing in this matter. A master's hearing was held by alternative communications technology before the divorce master on December 27, 2022, which was attended by the parties and their respective counsel. The master's report and recommendation was filed on January 12, 2023. Both Wife and Husband filed exceptions, respectively, on February 1, 2023, and February 24, 2023.

The oral argument on the exceptions was initially scheduled for April 21, 2023, however, upon the Court being made aware by the parties that the

hearing transcript had yet to be completed, the Court rescheduled the oral argument to commence on June 2, 2023.

After considering the record in this matter, including the hearing transcript, the master's report, and the exceptions and arguments of the parties' counsel, we are ready to decide this matter.

## DISCUSSION

When determining exceptions to the divorce master's recommendations, the court must first examine the Master's report. In Pennsylvania, a Master's report is only advisory, however it is to be given full consideration, especially in regards to the question of the credibility of witnesses because of the Master's opportunity to observe and assess the behavior of the witness. *Moran v. Moran* 839 A.2d 1091, 1095 (Pa. Super. 2003). A reviewing court is not bound by the Master's report and it does not come to the Court with any preponderate weight or authority that must be overcome. *Rothrick v. Rothrick*, 765 A.2d 400, 404 (Pa. Super. 2000). Even if the evidence before the Master is adequate to support the recommendation, a trial court is not required to adopt it. *Ewing v. Ewing*, 843 A.2d 1282, 1286 (Pa. Super. 2004). While a master's report is advisory only, it is given great deference. *Fiorilli v. Fiorilli*, 198 A.2d 369 (Pa. Super. 1964). A court will though affirm the master's recommendation if it is supported by the record.

Wife filed 12 Exceptions to the Master's report. All of which will be addressed hereunder sequentially. Further, after addressing Wife's exceptions we will also thereafter address Husband's exceptions consecutively.

2

*1. Wife contends she has reserves a right to supplement exceptions*

Wife's first exception asserted her right to supplement her exceptions with additional or more comprehensive exceptions forthwith after her receipt of the hearing transcript as the same had not been received before the time required to file exceptions. Such initial exception is hereby dismissed as moot as Wife never sought to supplement her exceptions following completion of the hearing transcript.

*2. Wife contends the master erred in failing to find that that Elba Florentino and Naipaul Ramlochan were parties to a common law marriage*

The Court previously ruled upon and denied this claim of common law marriage by Wife in its opinion and order dated July 19, 2021. Therefore, this issue is barred by the doctrine of *res judicata*, or claim preclusion, which prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication. Linton v. W.C.A.B. (Amcast Indus. Corp.), 991 A.2d 376 (Pa Cmwlth. 2010).

As such, this exception denied.

*3. Wife contends the master erred in failing to equitably divide marital property of the parties based upon a common law marriage*

*Supra*, this exception is denied.

*4. Wife contends the master erred in both in law and fact in undervaluing the Husband's 401(k) pension with Verizon*

Wife argues the master erred by undervaluing an asset held by Husband described by Wife in her exceptions as a "401(k) pension." Importantly, in the evidence presented in this action an asset known as a "401(k) pension" does not exist. The hearing showed two separate and distinct financial instruments exist

3

the Verizon Pension and the Verizon 401(k) plan. When the Wife notes a 401(k) pension in this exception, it is unclear what she is referring to. The Court hesitates to address this exception because of the lack of specificity. Wife's instant exception could refer to either the 401(k) plan or the Verizon pension plan.

However, concerning the evidence, the limited assets derived from Husband's employment included a 401(k) plan and a Verizon pension plan. At the time of the master's hearing, the parties through their counsel stipulated to Wife's receipt of a portion of Husband's Verizon pension plan through Husband's obligation to implement a Qualified Domestic Relations Order in order to fully resolve this issue. Such stipulation was also contained in the master's report and recommendation.

Thus, presuming in this exception that Wife meant "401(k) plan" rather than the already stipulated Verizon pension plan, we will deem it to be such, and the following analysis applies. At the master's hearing, Wife was questioned by her counsel as to whether she agreed with the value of the Husband's 401(k) plan at time of separation, as stated by Husband, being $65,014.74. Wife disagreed with such value, claiming the accurate value of the 401(k) plan was $400,000.00. She further claimed Husband had a loan against the 401(k) plan in the amount of $200,000.00. Wife thereafter admitted she had no documentation to present the master to corroborate either of her cited contentions as to the value of the 401(k) plan or a loan Husband had taken against the plan. Notably, however, Wife requested the master recommend she be awarded fifty percent of the value of the 401(k) plan.

4

Subsequently, Wife upon cross-examination admitted that in her pre-trial statement she asserted that Husband's 401(k) plan was worth $500,000.00. Further upon cross-examination, Wife agreed that the statement of Husband's 401(k) plan received from Verizon as attached to Husband's pre-trial statement contained the same account balance information claimed by Husband, being $65,014.74.

The master in his report ultimately found that the testimony and other evidence established the 401(k) plan had a value of $8,217.32 on the date of the parties' marriage and $65,014.74 at the date of separation. He thereupon found an increase in value during the marriage, being the marital portion subject to equitable distribution, of $56,797.42. Also, to the benefit of Wife, the master was persuaded by Wife's contention that the marital portion of the plan should not be reduced by payments husband had made against Husband's cited loan against the plan.

This Court agrees with the master's conclusions in regards to the valuation of the 401(k) plan and his decision not to reduce such value by the loan against such plan. The only portion of the account subject to equitable distribution is the increased value accrued during the marriage. See 23 Pa.C.S. §§ 3501(a), (a.1). Significantly, in this instance the report must be given full consideration since the master had the opportunity to fully observe the behavior and demeanor of the witnesses in this matter toward making credibility determinations. *Moran, supra*.

As such, this exception is denied.

5. *Wife contends the master erred in the entire structure of his proposed equitable distribution scheme in that the master awarded Husband most of all the liquid assets of the marriage and awarded Wife only with fixed assets.*

5

Initially, it is notable that this exception by Wife appears misplaced as the divorce master's report and recommendation did not award only fixed assets[1] to Wife, but also clearly awarded her liquid assets[2]. Separately, if this exception is premised upon Wife's prior exception concerning the existence of a common law marriage between the parties, this exception is denied for the reasoning set forth previously in section 2 of this Opinion.

Nonetheless, we will address this exception deeming it to be a challenge to the master's proposed equitable distribution scheme. In his report the master drew attention to three issues of equitable distribution of assets which required his decision, since at the time of the master's hearing the parties agreed by stipulation to have a Qualified Domestic Relations Order prepared for division of the Husband's pension. First, the Verizon 401(k) plan; second, the former marital residence; and third, the motor vehicles of the parties.

The master determined the marital portion of the Verizon 401(k) plan to be $56,797.42, as addressed previously in section 4 herein. As far as the martial residence was concerned, similar to Husband's 401(k) plan, the master determined

[1] ASSET, Black's Law Dictionary (11th ed. 2019).

fixed asset. (1838) See capital asset (1).

capital asset. (1905) 1. A long-term asset used in the operation of a business or used to produce goods or services, such as equipment, land, or an industrial plant. — Also termed fixed asset.

[2] ASSET, Black's Law Dictionary (11th ed. 2019).

liquid asset. See current asset.

current asset. (1905) An asset that is readily convertible into cash, such as a marketable security, a note, or an account receivable. — Also termed liquid asset; quick asset; near money; liquid asset. Cf. liquid asset.

6

that the only portion of the marital residence subject to equitable distribution would be any increase in value that accrued during the marriage. *See* 23 Pa.C.S. §§ 3501(a), (a.1). The residence was sold during the pendency of the divorce following the previous order of the Court determining a common law marriage did not exist. The sales proceeds of the residence are currently held in escrow for later distribution. We find under the evidence presented the Master properly assessed the increase of value that was attributable to the approximately four-year marital term from September 15, 2015 until December 10, 2019, being $5,000.00.

Thus, the master found the total marital estate to be distributed from the cited two assets was $61,797.42. The master recommended such total should be divided upon a basis of fifty percent to Wife and a fifty percent to Husband. In making this determination, the master took in to account the relatively short duration of the marriage of approximately four years and three months.

Lastly, when determining other remaining assets of value that were in existence, the evidence showed there were two motor vehicles from the marriage. The master split them essentially on the same distribution basis since each party retained the vehicle in their respective possession and remained responsible for any obligations tied to such vehicles.

After evaluating the evidence presented at the hearing in this matter, as well as the master's report and recommendation, this Court finds no error in the distribution scheme of such marital assets. Accordingly this exception is denied.

7

*6. Wife contends the master erred by determining the Husband had met his burden of proof*

Upon review of the hearing transcript and the master's report and recommendation, the Court is entirely unaware of any finding or other determination by the master that Husband had met his burden of proof. This exception is without merit and is denied.

*7. Wife contends the master erred in failing to consider all of the evidence concerning the factors set forth in Section 3502(a) of the Divorce code when making his equitable distribution determination*

A trial court has broad discretion when fashioning an equitable distribution award. *Brubaker v. Brubaker*, 201 A.3d 180, 184 (citation omitted). In making its decision regarding equitable distribution, the trial court must consider at least the eleven factors enumerated in 23 Pa.C.S. § 3502(a). *Isralsky v. Isralsky*, 824 A.2d 1178, 1191 (Pa. Super. 2003). However, there is no standard formula guiding the division of marital property and the method of distribution derives from the facts of the individual case. *Wang v. Feng*, 888 A.2d 882, 888 (Pa. Super. 2005) (citation omitted). While the list of factors in Section 3502 serves as a guideline for consideration, the list is neither exhaustive nor specific as to the weight to be given the various factors. *Id.* (citation omitted). Accordingly, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions. *Id.* (citation omitted).

Notably, in the instant exception before this Court, Wife completely fails to identify at any point which evidence, and therefore by implication, which factors of equitable distribution the master purportedly failed to consider in making his recommendation as to equitable distribution scheme. Issues that are not

8

developed or supported by citation to appropriate legal authority are waived. Treasure Lake Property Owner's Association, Inc., v. Meyer, 832 A.2d 477 (Pa Super. 2003). Accordingly, as Wife has not developed or identified any support for this contention, this exception is waived and otherwise is denied.

8. *Wife contends the master erred by not adequately taking into account the substantial contributions of the Wife concerning the marital residence.*

Upon review of the entire transcript of the master's hearing in this case, the Court is unaware of any evidence presented by Wife at such hearing regarding Wife's alleged substantial contributions to the marital residence. As such, this exception is without merit and is denied.

9. *Wife contends the master erred by not sufficiently considering and analyzing all of the testimony, and drawing conclusions that are either not based on or are controverted by, the testimony.*

Wife in this exception has not identified or cited to any specific hearing testimony or conclusions of the master in support of this contention. Issues that are not developed or supported by citation to appropriate legal authority are waived. Treasure Lake Property Owner's Association, Inc., v. Meyer, 832 A.2d 477 (Pa Super. 2003). Accordingly, this exception is waived and otherwise is denied.

10. *Wife contends the master erred by not taking into account all of the assets and sources of income of the Husband.*

Wife in this exception argues the master erred by not considering "all of the assets and sources of income of the Husband." Upon review the record in this matter, however, it is clear that Husband testified to and submitted evidence detailing his income and assets at the master's hearing. Husband clearly testified that his income was derived from his continuing employment at Verizon, and Wife did not dispute this evidence. Also, presuming Wife in this exception is challenging

9

the master's valuation of Husband's 401(k) plan. Wife was questioned by her counsel as to whether she agreed with the value of the Husband's 401(k) plan at time of separation, as stated by Husband, being $65,014.74. Wife disagreed with such value, claiming she believed the accurate value of the 401(k) plan was $400,000.00. Yet, Wife thereupon admitted she had no documentation to present the master to corroborate her claim as to the $400,000.00 value of the 401(k) plan.

Moreover, Wife upon cross-examination admitted that in her pre-trial statement she asserted that Husband's 401(k) plan was worth $500,000.00. Upon further questioning, Wife agreed that the statement of Husband's 401(k) plan received from Verizon as attached to Husband's pre-trial statement contained the same account balance information claimed by Husband, being $65,014.74. After evaluating the evidence presented at the hearing in this matter, as well as the master's report and recommendation, this Court finds no error in the master's valuation of Husband's Verizon 401(k) plan at $65,014.74, particularly in view of the varying and uncorroborated testimony of Wife regarding such plan. Additionally, the report must be given full consideration since the master had the opportunity to fully observe the behavior and demeanor of the witnesses in this matter in making credibility determinations. *Moran, supra.*

Therefore, this exception is denied.

11. *Wife contends the master erred in that the assets and income attributed to Husband are incorrect and in error.*

The Court denies this exception as being duplicative and otherwise for all of the reasons set forth previously in sections 4 and 10 of this Opinion.

10

*12. Wife takes exception to the master's report and recommendation in that imposition of the master's award as per the report and recommendation would cause unnecessary hardship and prejudice to the Plaintiff/Wife, and constitutes an abuse of the master's discretion and commission of an error of law.*

Upon review of the record and the entire transcript of the master's hearing in this case, the Court is unaware of any evidence developed or identified by Wife that in any way supports the contentions set forth in this exception.

As such, this final exception of Wife is without merit and is denied.

Separately, Husband also filed five exceptions which we will address hereafter *seriatim.*

*1. Husband contends he has reserves a right to supplement exceptions.*

Husband's first exception asserted his right to supplement his exceptions pending his receipt of the hearing transcript as the same had not been received before the time required to file exceptions. Such initial exception is hereby dismissed as moot as Husband never sought to supplement his exceptions following completion of the hearing transcript.

*2. Husband contends the master erred in his Findings of Fact in failing to find the correct value of Defendant's 401(k) by not including the repayment of the loan paid by Defendant prior to the marriage.*

Husband's second exception asserts the master's error in not including the amount of Husband's repayment of the loan paid by Defendant prior to the marriage. Husband testified at the master's hearing that he took out a loan before his marriage to Wife of approximately $56,000 against his Verizon 401(k) plan. He

11

stated that the proceeds of this loan were used for maintaining his household, paying bills and otherwise "keeping the house." He also testified that during the marriage he repaid approximately $45,000.00 of the cited loan. Husband contended that such loan repayment amount should be deducted from the value of the Verizon 401(k) plan since the loan predated the marriage of the parties and further that a large part of the repayment monies were to benefit the household, including Plaintiff and the children of the parties.

Contrarily, Wife argued any increase in value of Husband's Verizon 401(k) plan following the marriage, no matter the source, is marital property subject to distribution. The master ultimately found no deduction from the cited 401(k) plan was warranted in that Husband failed to introduce documents corroborating the dates of the loan repayments or the use of such funds. In view of the evidence presented on this issue, or otherwise the lack thereof, we find the master had a reasonable basis to determine that no deduction for loan repayments should be made against the value of Husband's 401(k) plan.

Accordingly, Husband's second exception is denied.

3. *Husband contends the master erred in his Findings of Fact in failing to find Wife had taken out a large loan during the parties' marriage, which Wife lent to a third party, and which loan was paid back by Wife using marital funds.*

Husband asserts in his next exception that the master erred in his Findings of Fact in failing to find Wife had taken out a large loan during the marriage, which Wife lent to a third party, and which loan was paid back by Wife using marital funds.

At the time of the master's hearing, Husband's counsel elicited testimony from Wife indicating that in 2019 Wife was awarded a judgment in the amount of

12

$19,750.00 against three individuals. Wife also testified she had lent those same individuals money and that such money came directly from her as she was working at the time.

Husband's counsel at the hearing also questioned Husband about whether Wife consulted Husband about the loan of $19,750.00, which Husband denied. Husband also testified he was not named on the loan and Wife never made him aware of this loan.

Notably, however, the master in his report, specifically in the findings as to marital debts, provided "to the extent not addressed elsewhere in this Master's Report, the parties' respective debts and obligations in their sole names shall remain their respective sole obligations after the entry of the divorce." The Court determines here that the master's cited finding as to each parties' responsibility for their own debts contemplates this matter as there was no evidence presented that Wife had paid off this purported loan or that the judgment in her name had been partially or fully satisfied. Additionally, the master's report and recommendation must be given the fullest consideration, especially in regards to the question of the credibility of witnesses, because of the Master has the opportunity to observe and assess the behavior and demeanor of the witnesses. *Moran, supra.* In this instance we affirm the recommendation of the master as we find it is supported by the record. Husband's third exception is denied.

---

4  *Husband contends the master erred in his Findings of Fact in failing to award Defendant repayment of legal fees, as Wife has purposely held up the finalizing of the Divorce causing Defendant unnecessary costs.*

13

In his fourth exception, Husband argues the master erred in his Findings of Fact in failing to award him repayment of legal fees, claiming it is warranted by Wife purposely holding up the finalizing of the Divorce and causing Defendant unnecessary costs. The master in his report concluded that neither party had provided any compelling evidence or documentation showing entitlement to an award of counsel fees or costs. After a thorough review of the transcript, the Court agrees an award of counsel fees or costs is not warranted here. Husband's fourth exception is therefore denied.

5. *Husband contends he reserves a right to withdraw these exceptions in the event the Judge finds in favor of his Motion to Strike Exceptions that Husband filed on February 17, 2023.*

This fifth and final exception of Husband is dismissed as moot as the Court denied Husband's Motion to Strike Exceptions by the Court's oral notice to the parties and their counsel at the time of oral arguments held on the parties' exceptions.

Accordingly, the following order is entered.

14

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

ELBA FLORENTINO,             :     No. 2482-CV-2019

                              :     No. 318 DR 2019

            Plaintiff,    :

v.                         :

                              :     IN DIVORCE

NAIPAUL RAMLOCHAN,     :

                              :

          Defendant.    :

## OPINION

Before this Court is the Petition of the Plaintiff, Elba Florentino ("Wife"), seeking leave to amend the Complaint in Divorce for the sole purpose of adding a claim for common law marriage.

## I.    BACKGROUND

Wife and Defendant, Naipaul Ramlochan ("Husband") are alleged by Wife to have met in high school and later started a romantic relationship. She asserts that on December 20, 1992 they entered a common law marriage while living in New York State. The parties' relationship in subsequent years bore three children, Amanda, Angelica, and Alyssa, born respectively in 1996, 2000, and 2002.

On December 11, 2001, Husband married an individual named Yanniris A. Fortuna at a ceremony performed at the Office of the City Clerk in Bronx Borough of New York City. Husband later divorced from Ms. Fortuna on November 19, 2003. Years later, on September 10, 2015, Wife and Husband were married during a marriage ceremony held in Reeders, Pennsylvania. Wife filed a Complaint in

Divorce on April 1, 2019. Her Complaint solely alleges the cited marriage of the parties during 2015 and is devoid of any claim of the existence of the cited common law marriage. On February 26, 2020, Husband filed an Answer to the Divorce Complaint, including a Counterclaim in Divorce.

The instant Petition of Wife to amend the Divorce Complaint was filed on November 9, 2020. Later, on November 17, 2020, Husband filed an Answer to the Petition denying the existence of a common law marriage. Wife filed a Request for a Hearing on December 15, 2020. Thereafter, following two continuances of the hearing requested by the parties, we held an evidentiary hearing with the parties and their counsel on March 5, 2021. The parties have submitted briefs and we are now ready to rule in this matter.

## II.    DISCUSSION

Although common law marriage has been abrogated by statute in this Commonwealth since 2005, an exception exists if a common law marriage began on or before January 1, 2005. 23 Pa.C.S.A. § 1103. Thus, following the evidentiary hearing in this matter, our analysis is focused on whether evidence exists establishing a common law marriage.

Even before it was abolished in 2005, common law marriage was generally disfavored in Pennsylvania, and a party alleging the existence of a common law marriage bears a "heavy burden." _Staudenmayer v. Staudenmayer_, 714 A.2d 1016, 1020 (Pa. 1998). When an attempt is made to establish a marriage without the

2

usual formalities, the claim must be viewed with "great scrutiny." *Estate of Carter,* 159 A.3d 970 (Super. Ct. 2017).

There are two ways in which a party can prove the existence of a common law marriage. Generally, the party alleging the common law marriage must show by clear and convincing evidence that the couple came to an "express agreement" – or *verba in praesenti* – "uttered with a view and for the purpose of establishing" the marital relationship. *Staudenmayer,* at 1020-21. Pennsylvania law also provides for a rebuttable presumption of a common law marriage that may be raised where the proponent of the marriage demonstrates (i) constant cohabitation by the parties and (ii) a reputation of marriage "which is not partial or divided but is broad and general." *Staudenmayer,* 714 A.2d at 1020-21 (citation omitted); *see also Estate of Carter,* 159 A.3d 970 (Super. Ct. 2017).

However, this rebuttable presumption is "is one of necessity to be applied only in cases ... [where there is an] inability to present direct testimony regarding the exchange of *verba in praesenti.*" *Staudenmayer,* 714 A.2d at 1021 (citation omitted).

Where the parties are available to testify regarding *verba in praesenti,* the burden rests with the party claiming a common law marriage to produce clear and convincing evidence of the exchange of words in the present tense spoken with the purpose of establishing the relationship of husband and wife, in other words, the marriage contract. In those situations, the rebuttable presumption in favor of a common law marriage upon sufficient proof of constant cohabitation and reputation for marriage, does not arise. *Id.* at 1021.

3

Here, following our analysis of the evidentiary record, we find Wife did not meet her burden of proving by clear and convincing evidence the existence of a common law marriage. This result follows Wife's testimony which was devoid of the exchange of words in the present tense for the purpose of establishing the relationship of husband and wife.

At the hearing in this matter, Wife was questioned by her attorney about the date on which she believed she married Husband via common law marriage, as follows:

Q: Can you tell Judge Higgins and Attorney Riegel what date you believed you married Mr. Ramlochan?
A: December 20, 1992.

Q: December 20, 1992?
A: Yes.

Q: Okay. And he proposed to you on that date?
A: Yes. He proposed and he celebrate my birthday.

Q: Well, let's see, when he proposed to you, what did he say to you?
A: He asked me if I could be his wife –

Q: Okay.
A: -- and I said, yes.

Q: And you said, yes?
A: Yes.

4

Q. And did you say, yes, to being his wife?

A. Yes.


Q. And again, the date was December 20, 1992?

A. Yes.


Q. And why do you remember that date, so specifically, besides the fact that Mr. Ramlochan asked you to marry him?

A. We celebrate my birthday.


N.T. pp. 11-12. Wife's testimony, if believed, is that at most on the date at issue Husband made a proposal to Wife to be married at some point in the future. Absent from her testimony is "the exchange of words in the present tense for the purpose of establishing the relationship of husband and wife." *Staude v. Staude, at* 1021, citing *Commonwealth v. Wilson*, 543 Pa. 429, 672 A.2d 293 (Pa. 1996). As is further evident from Wife's testimony of the cited conversation, even if she herself believed at that moment she was married, there was no testimony offered to confirm the present acknowledgement of a marriage having occurred between the parties.

Moreover, Wife presented the testimony of her daughter, Amanda Maria Ramlochan, who acknowledged that her mother, being Wife, "was proposed to in 1992." *See* N.T. p. 49. It is also significant that Wife admitted that other than her claims to getting married to Husband on December 20, 1992 by way of common law marriage, the only other date she acknowledged marrying Husband was the date stated in her original divorce complaint, being September 10, 2015. N.T. at p. 34. Thus, no evidence was presented that what Wife described in her testimony as a

5

proposal in 1992 ever resulted in a later consummation of the proposal in the succeeding months or years thereafter.

As we find the party alleging the common law marriage, Wife, was available and provided testimony ultimately failing to provide clear and convincing evidence of an express agreement of marriage, there is no reason for the Court to further analyze whether Wife has raised a rebuttable presumption of marriage by proving constant cohabitation and a reputation of marriage which is not partial or divided but is broad and general. If a putative spouse who is able to testify and fails to prove, by clear and convincing evidence, the establishment of the marriage contract through the exchange of *verba in praesenti*, then that party has not met its "heavy" burden to prove a common law marriage, since he or she does not enjoy any presumption based on evidence of constant cohabitation and reputation of marriage. *Staudenmayer*, at 1021, citing *Pierce v. Pierce*, 355 Pa. 175, 181, 49 A.2d 346, 349 (1946).

## III.    CONCLUSION

As Plaintiff has not net her burden of proving a common law marriage, her petition must be denied. We enter the following Order.

6

IN THE COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

| | | |
|---|---|---|
| ELBA FLORENTINO, | : | NO. 2482-CV-2019 |
| | : | NO. 318 DR 2019 |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| NAIPAUL RAMLOCHAN, | : | |
| | : | |
| Defendant. | : | |

## ORDER

**AND NOW** this 21st day of October, 2020, following a hearing on the Defendant's Petition for Exclusive Possession of the Marital Residence, and the Plaintiff's responses thereto, **IT IS ORDERED:**

1. On or before December 1, 2020, Plaintiff shall have the right to purchase the marital residential property located at 308 Appenzell Terrace, Stroudsburg, Pennsylvania from the Defendant, based upon the following terms:

   A. The purchase price shall be $230,000, with an initial deposit toward the purchase price of no less than $100. Such deposit shall be held in escrow by Defendant's counsel until settlement to be applied to the purchase; should settlement not occur any deposits shall be promptly returned to Plaintiff.

   B. At time of settlement, the following items, *if outstanding and unpaid*, will be prorated on a daily basis between Plaintiff and Defendant: current property taxes, current homeowner's association fees (if applicable), current water and/or sewer fees, along with any other municipal lien able service fees. Any such applicable unpaid charges will be prorated for the period(s) covered. Should either party have previously paid the current

year's property taxes, there shall be no reimbursement of such payment to such party.

C. Defendant shall not encumber the title to the property, and the conveyance from Defendant to Plaintiff shall be by a fee simple deed of special warranty prepared by Defendant.

D. This conveyance shall be exempt from the requirements of the Real Estate Seller Disclosure Law, 68 Pa.C.S §§7101-7512.

E. Plaintiff is purchasing the property "as is, with all faults."

F. The net proceeds of such purchase shall be placed in escrow for distribution upon resolution of the divorce action of the parties.

2. In the event Plaintiff does not purchase the martial residential property on or before December 1, 2020, Defendant shall be entitled to exclusive possession of the property after such date. Upon taking exclusive possession of the property, Defendant shall promptly list the same for sale at a listing price of no less than $230,000 with a qualified Pennsylvania licensed realtor at a standard realtor's commission. Upon the sale of the property, the net proceeds of such sale shall be placed in escrow for distribution upon resolution of the divorce action of the parties.

BY THE COURT:

C. DANIEL HIGGINS, JR., Judge

cc:     Brett J. Reigel, Esq.
        Andrew J. Katsock, III, Esq.

**IN THE COURT OF COMMON PLEAS OF MONROE COUNTY**
**FORTY-THIRD JUDICIAL DISTRICT**
**COMMONWEALTH OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **ELBA FLORENTINO,** | : | **No. 32 EDA 2024** |
|  | : |  |
|  | : | **Trial Court** |
| **Plaintiff/Appellant,** | : | **No. 2482 CV 2019** |
|  | : | **No. 318 DR 2019** |
|  | : |  |
| **v.** | : |  |
|  | : |  |
| **NAIPAUL RAMLOCHAN,** | : |  |
|  | : |  |
| **Defendant/Appellee.** | : | **Appeal** |

## OPINION PURSUANT TO Pa. R.A.P. 1925(a)

This matter is before this Court upon a Notice of Appeal filed December 27, 2023, by Appellant, Elba Florentino of this Court's Divorce Decree entered November 27, 2023.

I.      Procedural background

This matter has a lengthy background. A Complaint in Divorce was filed by Appellant on April 1, 2019, wherein she alleged that her marriage to Defendant, Naipaul Ramlochan ("Appellee") existed from the time of their marriage ceremony in 2015 to the agreed separation date of the parties on December 10, 2019. On March 11, 2020, Appellee filed a Petition for Exclusive Possession of the Marital Residence and for Order to List for Sale. Such marital residential property had been purchased by Appellee before the marriage and remained titled solely in Appellee's name. Appellant filed an answer to such petition, requesting the Court to deny the relief sought by Appellant, being exclusive possession of the marital residence and the right to list such residence for

sale. A hearing was scheduled for July 24, 2020[1]. A status conference was later held by the Court and the parties with their counsel on October 14, 2020, during which the parties agreed to resolve the issue concerning the marital residence by permitting Appellant a limited opportunity to purchase the marital residence. Thereafter, on October 21, 2020, this Court issued an Order giving Appellant the right to purchase the marital residence for a purchase price of $230,000.00 on or before December 1, 2020. The Order further provided that in the event that Appellant failed to purchase the marital residence by that date, then Appellee shall be entitled to exclusive possession of the residence and shall promptly list the same for sale.

Appellant failed to purchase the marital residence by December 1, 2020, and during January of 2021, the Appellee changed the locks on the martial residence.

Further, during this approximate period, Appellant filed a motion to amend her divorce complaint, seeking to make the sole amendment to allege that the parties previously entered into a common law marriage on December 20, 1992, while living in New York State. Later, Appellee filed an answer to the petition, denying the existence of a common law marriage. This Court thereupon scheduled an evidentiary hearing to determine the motion to amend the divorce complaint.

Prior to the hearing on the motion to amend the complaint, Appellant filed an emergency petition for special relief on January 29, 2021. Appellant alleged in such special relief petition, in pertinent part, that despite the Court previously granting her the right to purchase the marital residence, she had only recently been able to obtain

---

[1] There is no Order in reference to this hearing and the next Order on the docket is in regards to scheduling a conference for October 14, 2020.

2

financing for such purchase, and further she had been illegally evicted from the residence by the changing of the house's locks by Appellee.

Thereafter, on March 5, 2021, the Court held an evidentiary hearing with the parties and their counsel to dispose of the motion to amend the complaint and also to address the cited petition for special relief. Subsequently, the Court denied the Appellant's petition for special relief in an order filed on March 18, 2021. After this, the Appellant appealed such decision to the Superior Court of Pennsylvania. In an Order dated June 17, 2021, the Superior Court addressed the trial court order. The Superior Court noted the order did not appear to be a final order,[2] nor was it appealable as an interlocutory appeal as of right since the March 18th order was filed pursuant to the parties' divorce matter.[3]

Separately, this Court filed an Order and Opinion dated July 19, 2021, ultimately determining that Appellant did not meet her burden of proving a common law marriage. As a result, we denied her petition seeking to amend her divorce complaint. On January 26, 2022, the Appellee made a petition requesting the appointment of a divorce master. After several continuances, objections to the appointment, and a praecipe to withdraw, the Court ordered a Divorce Master be appointed on November 4, 2022. Thereafter, on January 12, 2023, the Divorce Master rendered his report and recommendation following the master's hearing being held.

---

[2] *See Pa. R.A.P. 341(b)(1)* (a final order is any order that disposes of all claims and of all parties); *Fried v. Fried*, 501 A.2d 211 (Pa. 1985) (issues in divorce are reviewable after entry of divorce decree and resolution of all economic issues reflecting the policy of la which abhors piecemeal determinations and protracted litigation in divorce matters.

[3] The March 18th order does not appear to meet the exception to Pa.R.A.P. §§311 (a)(2) and (4) in light of the filing under the Divorce Code §§ 23 Pa.C.S. 3323(f) and 3505(a).

3

On February 1, 2023, Appellant filed exceptions to the Master's report and Appellee also filed exceptions on February 24, 2023. On November 21, 2023, the Court addressed both Appellant's and Appellee's exceptions, denying all the exceptions and deducing that the Master did not err in the report and recommendation. Then, on November 27, 2023, this Court entered a divorce decree adopting the recommendations of the Master as outlined in the Master's Report and Recommendation. On December 27, 2023, Appellant filed an appeal with the Superior Court of the November 27, 2023 divorce decree. This Court directed Appellant to file her concise statement of errors complained of on appeal in accordance with Pa. R.A.P. 1925(b), which she did on January 18, 2024.

The Appellant, in her P.A. R.A.P. 1925(b) concise statement, alleges 23 separate errors and abuses of discretion.

Upon review of Appellant's concise statement of errors, this Court succinctly categorized the 23 errors listed therein into four primary issues complained of on appeal and will address them as such. The first issue of complained of errors listed as 1 through 8 of Appellant 's 1925(b) statement asserts the Court erred or abused its discretion in the denial of Appellant 's petition for emergency special relief. The second issue of complained of errors listed as 9 through 14 of the statement contends the Court erred in its denial of Appellant 's claim that the parties to this action were parties to a Common Law Marriage. The third issue of complained of errors listed as 15 in the statement claims the trial court erred both as a matter of law and fact in undervaluing the Appellee's 401(k) Pension with Verizon. The fourth and final issue of complained of

4

errors listed in 16 through 23 of the statement claims the Court erred in failing to sustain the Appellant 's Exceptions to the Divorce Master's Report and Recommendation.

I.      **Appellant's Claimed Errors listed as 1-8: The Court erred or abused its discretion in the denial of Appellant's petition for emergency special relief**

Appellant asserts the Court erred or abused its discretion in the denial of Appellant's petition for emergency special relief, in which she claimed that despite the Court previously granting her the right to purchase the marital residence, she had only been able to obtain financing for such purchase after the purchase deadline imposed by order had passed, and also that she had been illegally evicted from the residence by the changing of the house's locks by Appellee.

As previously noted, this Court issued an Order giving Appellant the right to purchase the marital residence for a purchase price of $230,000.00 on or before the date of December 1, 2020. The Order further provided that in the event that Appellant failed to purchase the marital residence by that date, then Appellee shall be entitled to exclusive possession of the residence and shall promptly list the same for sale. Appellant failed to purchase the marital residence by December 1, 2020, and during January of 2021, the Appellee took exclusive possession of the residence and changed the locks on the property.

Pa.R.C.P. 1920.43 provides, in significant part, as follows:

> (a) At any time after the filing of the complaint, on petition setting forth facts entitling the party to relief, the court may, upon such terms and conditions as it deems just, including the filing of security,
> (1) issue preliminary or special injunctions necessary to prevent the removal, disposition, alienation or encumbering of real or personal property in accordance with Rule 1531(a), (c), (d) and (e); or

5

(2) order the seizure or attachment of real or personal property; or

(3) grant other appropriate relief.

The granting of appropriate special relief under Pa.R.C.P. 1920.43 is within the sound discretion of the trial court and is an exercise of its equitable powers. *Jawork v. Jawork,* 548 A.2d 290, 293 (Super.Ct. 1988). The decision as to whether special relief is granted will not be disturbed absent an abuse of discretion. *Id.*

The Court held a hearing regarding the Appellant's petition for special relief on March 5, 2021. Appellant testified she was currently living in Bronx, New York [N.T. 3.5.2021 at pg. 72]. Appellant acknowledged that the date of December 1, 2020 was the date by which she needed to purchase marital residence by under the Court's Order [N.T. 3.5.2021 at pg. 78-79]. Significantly, Appellant admitted multiple times in her testimony that she was unable to finance the purchase because she did not make enough money [N.T. 3.5.2021 at pg. 74, 82]. Appellant further claimed she needed additional time to effectuate the purchase beyond the court-ordered deadline. However, upon cross-examination, she acknowledged never filing a motion for extension of the purchase deadline [N.T. 3.5.2021 at pg. 79]. Appellant additionally admitted that pursuant to the cited Order dated October 21, 2020, she did not even make the initial $100.00 deposit that she was required to make under the Order, and that she was unaware of such requirement. [N.T. 3.5.2021 at pg. 82].

Regarding Appellant's claims in her petition that she had been illegally evicted from the residence by Appellee, upon cross-examination, Appellant acknowledged that at the time she appeared at the residence in January of 2021 and realized the locks had been changed, she in fact was the person that called the police.

6

[N.T. 3.5.2021 at pg. 80]. She also admitted in contrast to her petition's allegations that it was not Appellee that made the police officers keep her out of the residence, it was the officers themselves that reviewed the Court's Order and then refused to allow her into the residence [N.T. 3.5.2021 at pg. 79-80].

After duly considering all of the testimony of Appellant, and, importantly, finding her testimony credible that she was unable herself to purchase the residential property, along with her admission that she did not even make the required deposit toward the purchase required by this Court's Order, nor file for an extension of the purchase deadline, and that she had current housing, and other sound reasons, we decided the Appellant's petition for special relief must be denied.

II.    **Appellant's Claimed Errors listed as 9 through 14: The Court Erred in the Denial of Appellant's Claim that the Parties to this Action were Parties to a Common Law Marriage**

Regarding this issue, upon review of the opinion and order dated July 19, 2021, we determine the analysis therein sufficiently addresses the complained of errors.

III.    **Appellant's Claimed Error listed as 15: The Court Erred Both as a Matter of Law and Fact in Undervaluing the Appellee's 401(k) Pension with Verizon**

Concerning this issue, this Court determines this complained of error is misplaced and is otherwise waived as it is clear from the record that this Court did not at any point during this action undertake a valuation of the pension of any party.

7

**IV.** **Appellant's Claimed Errors listed as 16 through 23: The Court Erred in Failing to Sustain the Appellant 's Exceptions to the Master's Report and Recommendation**

Relative to this issue, upon review of the opinion and order dated November 21, 2023, specifically under sections 4 through 12 (opinion at pgs. 3-11), we determine that the analysis therein sufficiently addresses the complained of errors.

We respectfully request this Superior Court to affirm our decisions.

Dated: 02.26.2024        **BY THE COURT:**

**C. DANIEL HIGGINS, JR., Judge**

cc:    Andrew J. Katsock, III, Esq.
      Brett J. Riegel, Esq.

Monroe County PA Prothonotary
FEB 26 '24 PM4:12

**COURT OF COMMON PLEAS OF MONROE COUNTY**
**FORTY THIRD JUDICIAL DISTRICT**
**COMMONWEALTH OF PENNSYLVANIA**

| | | |
|---|---|---|
| FLORENTINO ELBA, | : | No. 002482-CV-2019 |
| | : | |
| Plaintiff/s, | : | |
| | : | |
| vs. | : | |
| | : | |
| RAMLOCHAN NAIPAUL, | : | |
| Defendant/s | : | |
| | : | |
| | : | |

**NOTICE OF ENTRY OF (ORDER)(JUDGMENT)(VERDICT)(OPINION AND ORDER)**

NOTICE IS GIVEN UNDER PENNSYLVANIA RULE OF CIVIL PROCEDURE 236(a)(2) THAT AN (ORDER)(JUDGMENT)(VERDICT)(OPINION AND ORDER) WAS ENTERED IN THIS CASE ON February 28, 2024.

GEORGE J. WARDEN, Prothonotary

By:_____
       Michelle Warsaw

cc:   ANDREW KATSOCK, ESQ
       BRETT J RIEGEL, ESQ

IN THE COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

| | | |
|---|---|---|
| ELBA FLORENTINO, | : | |
| | : | No. 2482 CV 2019 |
| | : | No. 318 DR 2019 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NAIPAUL RAMLOCHAN, | : | |
| | : | DIVORCE EXCEPTIONS |
| Defendant. | : | |

### O P I N I O N

This matter is before the Court on exceptions to the divorce master's report and recommendation filed by Plaintiff Elba Florentino (Wife) and separate exceptions also filed by Defendant, Naipaul Ramlochan (Husband).

By way of background, Wife and Husband were married on September 15, 2015, in Monroe County, Pennsylvania. A complaint in divorce was filed by Wife against Husband on April 1, 2019. Their date of separation was December 10, 2019, as agreed by the parties at the time of the divorce master's hearing in this matter. A master's hearing was held by alternative communications technology before the divorce master on December 27, 2022, which was attended by the parties and their respective counsel. The master's report and recommendation was filed on January 12, 2023. Both Wife and Husband filed exceptions, respectively, on February 1, 2023, and February 24, 2023.

The oral argument on the exceptions was initially scheduled for April 21, 2023, however, upon the Court being made aware by the parties that the

hearing transcript had yet to be completed, the Court rescheduled the oral argument to commence on June 2, 2023.

After considering the record in this matter, including the hearing transcript, the master's report, and the exceptions and arguments of the parties' counsel, we are ready to decide this matter.

## DISCUSSION

When determining exceptions to the divorce master's recommendations, the court must first examine the Master's report. In Pennsylvania, a Master's report is only advisory, however it is to be given full consideration, especially in regards to the question of the credibility of witnesses because of the Master's opportunity to observe and assess the behavior of the witness. *Moran v. Moran*, 839 A.2d 1091, 1095 (Pa. Super. 2003). A reviewing court is not bound by the Master's report and it does not come to the Court with any preponderate weight or authority that must be overcome. *Rothrick v. Rothrick*, 765 A.2d 400, 404 (Pa. Super. 2000). Even if the evidence before the Master is adequate to support the recommendation, a trial court is not required to adopt it. *Ewing v. Ewing*, 843 A.2d 1282, 1286 (Pa. Super. 2004). While a master's report is advisory only, it is given great deference. *Fiorilli v. Fiorilli*, 198 A.2d 369 (Pa. Super. 1964). A court will though affirm the master's recommendation if it is supported by the record.

Wife filed 12 Exceptions to the Master's report. All of which will be addressed hereunder sequentially. Further, after addressing Wife's exceptions we will also thereafter address Husband's exceptions consecutively.

2

*1. Wife contends she has reserves a right to supplement exceptions*

Wife's first exception asserted her right to supplement her exceptions with additional or more comprehensive exceptions forthwith after her receipt of the hearing transcript as the same had not been received before the time required to file exceptions. Such initial exception is hereby dismissed as moot as Wife never sought to supplement her exceptions following completion of the hearing transcript.

*2. Wife contends the master erred in failing to find that that Elba Florentino and Naipaul Ramlochan were parties to a common law marriage*

The Court previously ruled upon and denied this claim of common law marriage by Wife in its opinion and order dated July 19, 2021. Therefore, this issue is barred by the doctrine of *res judicata*, or claim preclusion, which prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication. Linton v. W.C.A.B. (Amcast Indus. Corp.), 991 A.2d 376 (Pa. Cmwlth. 2010).

As such, this exception denied.

*3. Wife contends the master erred in failing to equitably divide marital property of the parties based upon a common law marriage*

*Supra*, this exception is denied.

*4. Wife contends the master erred in both in law and fact in undervaluing the Husband's 401(k) pension with Verizon*

Wife argues the master erred by undervaluing an asset held by Husband described by Wife in her exceptions as a "401(k) pension." Importantly, in the evidence presented in this action an asset known as a "401(k) pension" does not exist. The hearing showed two separate and distinct financial instruments exist

3

the Verizon Pension and the Verizon 401(k) plan. When the Wife notes a 401(k) pension in this exception, it is unclear what she is referring to. The Court hesitates to address this exception because of the lack of specificity. Wife's instant exception could refer to either the 401(k) plan or the Verizon pension plan.

However, concerning the evidence, the limited assets derived from Husband's employment included a 401(k) plan and a Verizon pension plan. At the time of the master's hearing, the parties through their counsel stipulated to Wife's receipt of a portion of Husband's Verizon pension plan through Husband's obligation to implement a Qualified Domestic Relations Order in order to fully resolve this issue. Such stipulation was also contained in the master's report and recommendation.

Thus, presuming in this exception that Wife meant "401(k) plan" rather than the already stipulated Verizon pension plan, we will deem it to be such, and the following analysis applies. At the master's hearing, Wife was questioned by her counsel as to whether she agreed with the value of the Husband's 401(k) plan at time of separation, as stated by Husband, being $65,014.74. Wife disagreed with such value, claiming the accurate value of the 401(k) plan was $400,000.00. She further claimed Husband had a loan against the 401(k) plan in the amount of $200,000.00. Wife thereafter admitted she had no documentation to present the master to corroborate either of her cited contentions as to the value of the 401(k) plan or a loan Husband had taken against the plan. Notably, however, Wife requested the master recommend she be awarded fifty percent of the value of the 401(k) plan.

4

Subsequently, Wife upon cross-examination admitted that in her pre-trial statement she asserted that Husband's 401(k) plan was worth $500,000.00. Further, upon cross-examination, Wife agreed that the statement of Husband's 401(k) plan received from Verizon as attached to Husband's pre-trial statement contained the same account balance information claimed by Husband, being $65,014.74.

The master in his report ultimately found that the testimony and other evidence established the 401(k) plan had a value of $8,217.32 on the date of the parties' marriage and $65,014.74 at the date of separation. He thereupon found an increase in value during the marriage, being the marital portion subject to equitable distribution, of $56,797.42. Also, to the benefit of Wife, the master was persuaded by Wife's contention that the marital portion of the plan should not be reduced by payments husband had made against Husband's cited loan against the plan.

This Court agrees with the master's conclusions in regards to the valuation of the 401(k) plan and his decision not to reduce such value by the loan against such plan. The only portion of the account subject to equitable distribution is the increased value accrued during the marriage. See 23 Pa.C.S. §§ 3501(a), (a.1). Significantly, in this instance the report must be given full consideration since the master had the opportunity to fully observe the behavior and demeanor of the witnesses in this matter toward making credibility determinations. *Moran, supra.*

As such, this exception is denied.

*5. Wife contends the master erred in the entire structure of his proposed equitable distribution scheme in that the master awarded Husband most of all the liquid assets of the marriage and awarded Wife only with fixed assets.*

5

Initially, it is notable that this exception by Wife appears misplaced as the divorce master's report and recommendation did not award only fixed assets[1] to Wife, but also clearly awarded her liquid assets[2]. Separately, if this exception is premised upon Wife's prior exception concerning the existence of a common law marriage between the parties, this exception is denied for the reasoning set forth previously in section 2 of this Opinion.

Nonetheless, we will address this exception deeming it to be a challenge to the master's proposed equitable distribution scheme. In his report the master drew attention to three issues of equitable distribution of assets which required his decision since at the time of the master's hearing the parties agreed by stipulation to have a Qualified Domestic Relations Order prepared for division of the Husband's pension. First, the Verizon 401(k) plan; second, the former marital residence; and third, the motor vehicles of the parties.

The master determined the marital portion of the Verizon 401(k) plan to be $56,797.42, as addressed previously in section 4 herein. As far as the martial residence was concerned, similar to Husband's 401(k) plan, the master determined

---

fixed asset. See *capital asset*.

capital asset. ... 1. A long-term asset used in the operation of a business or used to produce goods or services, such as equipment, land, or an industrial plant. — Also termed *fixed asset*.

[2] ASSET. Black's Law Dictionary (11th ed. 2019).

liquid asset. See *current asset*.

current asset. (1909) An asset that is readily convertible into cash, such as a marketable security, a note, or an account receivable. — Also termed *liquid asset*; *quick asset*; *near money*. — *current asset*. Cf. *fixed asset*.

that the only portion of the marital residence subject to equitable distribution would be any increase in value that accrued during the marriage. *See* 23 Pa.C.S. §§ 3501(a), (a.1). The residence was sold during the pendency of the divorce following the previous order of the Court determining a common law marriage did not exist. The sales proceeds of the residence are currently held in escrow for later distribution. We find under the evidence presented the Master properly assessed the increase of value that was attributable to the approximately four-year marital term from September 15, 2015 until December 10, 2019, being $5,000.00.

Thus, the master found the total marital estate to be distributed from the cited two assets was $61,797.42. The master recommended such total should be divided upon a basis of fifty percent to Wife and a fifty percent to Husband. In making this determination, the master took in to account the relatively short duration of the marriage of approximately four years and three months.

Lastly, when determining other remaining assets of value that were in existence, the evidence showed there were two motor vehicles from the marriage. The master split them essentially on the same distribution basis since each party retained the vehicle in their respective possession and remained responsible for any obligations tied to such vehicles.

After evaluating the evidence presented at the hearing in this matter, as well as the master's report and recommendation, this Court finds no error in the distribution scheme of such marital assets. Accordingly this exception is denied.

7

6. *Wife contends the master erred by determining the Husband had met his burden of proof.*

Upon review of the hearing transcript and the master's report and recommendation, the Court is entirely unaware of any finding or other determination by the master that Husband had met his burden of proof. This exception is without merit and is denied.

7. *Wife contends the master erred in failing to consider all of the evidence concerning the factors set forth in Section 3502(a) of the Divorce code when making his equitable distribution determination.*

A trial court has broad discretion when fashioning an equitable distribution award. *Brubaker v. Brubaker*, 201 A.3d 180, 184 (citation omitted). In making its decision regarding equitable distribution, the trial court must consider at least the eleven factors enumerated in 23 Pa.C.S. § 3502(a). *Isralsky v. Isralsky*, 824 A.2d 1178, 1191 (Pa. Super. 2003). However, there is no standard formula guiding the division of marital property and the method of distribution derives from the facts of the individual case. *Wang v. Feng*, 888 A.2d 882, 888 (Pa. Super. 2005) (citation omitted). While the list of factors in Section 3502 serves as a guideline for consideration, the list is neither exhaustive nor specific as to the weight to be given the various factors. *Id.* (citation omitted). Accordingly, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions. *Id.* (citation omitted).

Notably, in the instant exception before this Court, Wife completely fails to identify at any point which evidence, and therefore by implication, which factors of equitable distribution the master purportedly failed to consider in making his recommendation as to equitable distribution scheme. Issues that are not

8

developed or supported by citation to appropriate legal authority are waived. Treasure Lake Property Owner's Association, Inc. v. Meyer, 832 A.2d 477 (Pa. Super. 2003). Accordingly, as Wife has not developed or identified any support for this contention, this exception is waived and otherwise is denied.

8. Wife contends the master erred by not adequately taking into account the substantial contributions of the Wife concerning the marital residence.

Upon review of the entire transcript of the master's hearing in this case, the Court is unaware of any evidence presented by Wife at such hearing regarding Wife's alleged substantial contributions to the marital residence. As such, this exception is without merit and is denied.

9. Wife contends the master erred by not sufficiently considering and analyzing all of the testimony, and drawing conclusions that are either not based on, or are controverted by, the testimony.

Wife in this exception has not identified or cited to any specific hearing testimony or conclusions of the master in support of this contention. Issues that are not developed or supported by citation to appropriate legal authority are waived. Treasure Lake Property Owner's Association, Inc. v. Meyer, 832 A.2d 477 (Pa. Super. 2003). Accordingly, this exception is waived and otherwise is denied.

10. Wife contends the master erred by not taking into account all of the assets and sources of income of the Husband.

Wife in this exception argues the master erred by not considering "all of the assets and sources of income of the Husband." Upon review the record in this matter, however, it is clear that Husband testified to and submitted evidence detailing his income and assets at the master's hearing. Husband clearly testified that his income was derived from his continuing employment at Verizon, and Wife did not dispute this evidence. Also, presuming Wife in this exception is challenging

9

the master's valuation of Husband's 401(k) plan. Wife was questioned by her counsel as to whether she agreed with the value of the Husband's 401(k) plan at time of separation, as stated by Husband, being $65,014.74. Wife disagreed with such value, claiming she believed the accurate value of the 401(k) plan was $400,000.00. Yet, Wife thereupon admitted she had no documentation to present the master to corroborate her claim as to the $400,000.00 value of the 401(k) plan.

Moreover, Wife upon cross-examination admitted that in her pre-trial statement she asserted that Husband's 401(k) plan was worth $500,000.00. Upon further questioning, Wife agreed that the statement of Husband's 401(k) plan received from Verizon as attached to Husband's pre-trial statement contained the same account balance information claimed by Husband, being $65,014.74. After evaluating the evidence presented at the hearing in this matter, as well as the master's report and recommendation, this Court finds no error in the master's valuation of Husband's Verizon 401(k) plan at $65,014.74, particularly in view of the varying and uncorroborated testimony of Wife regarding such plan. Additionally, the report must be given full consideration since the master had the opportunity to fully observe the behavior and demeanor of the witnesses in this matter in making credibility determinations. *Moran, supra*.

Therefore, this exception is denied.

11. *Wife contends the master erred in that the assets and income attributed to Husband are incorrect and in error.*

The Court denies this exception as being duplicative and otherwise for all of the reasons set forth previously in sections 4 and 10 of this Opinion.

10

*12. Wife takes exception to the master's report and recommendation in that imposition of the master's award as per the report and recommendation would cause unnecessary hardship and prejudice to the Plaintiff/Wife, and constitutes an abuse of the master's discretion and commission of an error of law.*

Upon review of the record and the entire transcript of the master's hearing in this case, the Court is unaware of any evidence developed or identified by Wife that in any way supports the contentions set forth in this exception.

As such, this final exception of Wife is without merit and is denied.

Separately, Husband also filed five exceptions which we will address hereafter *seriatim*:

*1. Husband contends he has reserves a right to supplement exceptions*

Husband's first exception asserted his right to supplement his exceptions pending his receipt of the hearing transcript as the same had not been received before the time required to file exceptions. Such initial exception is hereby dismissed as moot as Husband never sought to supplement his exceptions following completion of the hearing transcript.

*2. Husband contends the master erred in his Findings of Fact in failing to find the correct value of Defendant's 401(k) by not including the repayment of the loan paid by Defendant prior to the marriage.*

Husband's second exception asserts the master's error in not including the amount of Husband's repayment of the loan paid by Defendant prior to the marriage. Husband testified at the master's hearing that he took out a loan before his marriage to Wife of approximately $56,000 against his Verizon 401(k) plan. He

11

stated that the proceeds of this loan were used for maintaining his household, paying bills and otherwise "keeping the house." He also testified that during the marriage he repaid approximately $45,000.00 of the cited loan. Husband contended that such loan repayment amount should be deducted from the value of the Verizon 401(k) plan since the loan predated the marriage of the parties and further that a large part of the repayment monies were to benefit the household, including Plaintiff and the children of the parties.

Contrarily, Wife argued any increase in value of Husband's Verizon 401(k) plan following the marriage, no matter the source, is marital property subject to distribution. The master ultimately found no deduction from the cited 401(k) plan was warranted in that Husband failed to introduce documents corroborating the dates of the loan repayments or the use of such funds. In view of the evidence presented on this issue, or otherwise the lack thereof, we find the master had a reasonable basis to determine that no deduction for loan repayments should be made against the value of Husband's 401(k) plan.

Accordingly, Husband's second exception is denied.

*3. Husband contends the master erred in his Findings of Fact in failing to find Wife had taken out a large loan during the parties' marriage, which Wife lent to a third party, and which loan was paid back by Wife using marital funds.*

Husband asserts in his next exception that the master erred in his Findings of Fact in failing to find Wife had taken out a large loan during the marriage, which Wife lent to a third party, and which loan was paid back by Wife using marital funds.

At the time of the master's hearing, Husband's counsel elicited testimony from Wife indicating that in 2019 Wife was awarded a judgment in the amount of

12

$19,750.00 against three individuals. Wife also testified she had lent those same individuals money and that such money came directly from her as she was working at the time.

Husband's counsel at the hearing also questioned Husband about whether Wife consulted Husband about the loan of $19,750.00 which Husband denied. Husband also testified he was not named on the loan and Wife never made him aware of this loan.

Notably, however, the master in his report, specifically in the findings as to marital debts, provided "to the extent not addressed elsewhere in this Master's Report, the parties' respective debts and obligations in their sole names shall remain their respective sole obligations after the entry of the divorce." The Court determines here that the master's cited finding as to each parties' responsibility for their own debts contemplates this matter as there was no evidence presented that Wife had paid off this purported loan or that the judgment in her name had been partially or fully satisfied. Additionally, the master's report and recommendation must be given the fullest consideration, especially in regards to the question of the credibility of witnesses, because of the Master has the opportunity to observe and assess the behavior and demeanor of the witnesses. *Moran, supra*. In this instance we affirm the recommendation of the master as we find it is supported by the record. Husband's third exception is denied.

4   *Husband contends the master erred in his Findings of Fact in failing to award Defendant repayment of legal fees, as Wife has purposely held up the finalizing of the Divorce causing Defendant unnecessary costs.*

13

In his fourth exception, Husband argues the master erred in his Findings of Fact in failing to award him repayment of legal fees, claiming it is warranted by Wife purposely holding up the finalizing of the Divorce and causing Defendant unnecessary costs. The master in his report concluded that neither party had provided any compelling evidence or documentation showing entitlement to an award of counsel fees or costs. After a thorough review of the transcript, the Court agrees an award of counsel fees or costs is not warranted here. Husband's fourth exception is therefore denied.

5   *Husband contends he reserves a right to withdraw these exceptions in the event the Judge finds in favor of his Motion to Strike Exceptions that Husband filed on February 17, 2023.*

This fifth and final exception of Husband is dismissed as moot as the Court denied Husband's Motion to Strike Exceptions by the Court's oral notice to the parties and their counsel at the time of oral arguments held on the parties' exceptions.

Accordingly, the following order is entered.

14

# COURT OF COMMON PLEAS OF MONROE COUNTY
## FORTY-THIRD JUDICIAL DISTRICT
## COMMONWEALTH OF PENNSYLVANIA

ELBA FLORENTINO,      :     No. 2482-CV-2019

          :     No. 318 DR 2019

          Plaintiff,    :

v.               :

          :     IN DIVORCE

NAIPAUL RAMLOCHAN,     :

          :

          Defendant.    :

## OPINION

Before this Court is the Petition of the Plaintiff, Elba Florentino ("Wife"), seeking leave to amend the Complaint in Divorce for the sole purpose of adding a claim for common law marriage.

## I.    BACKGROUND

Wife and Defendant, Naipaul Ramlochan ("Husband") are alleged by Wife to have met in high school and later started a romantic relationship. She asserts that on December 20, 1992 they entered a common law marriage while living in New York State. The parties' relationship in subsequent years bore three children, Amanda, Angelica, and Alyssa, born respectively in 1996, 2000, and 2002.

On December 11, 2001, Husband married an individual named Yanniris A. Fortuna at a ceremony performed at the Office of the City Clerk in Bronx Borough of New York City. Husband later divorced from Ms. Fortuna on November 19, 2003. Years later, on September 10, 2015, Wife and Husband were married during a marriage ceremony held in Reeders, Pennsylvania. Wife filed a Complaint in

Divorce on April 1, 2019. Her Complaint solely alleges the cited marriage of the parties during 2015 and is devoid of any claim of the existence of the cited common law marriage. On February 26, 2020, Husband filed an Answer to the Divorce Complaint, including a Counterclaim in Divorce.

The instant Petition of Wife to amend the Divorce Complaint was filed on November 9, 2020. Later, on November 17, 2020, Husband filed an Answer to the Petition denying the existence of a common law marriage. Wife filed a Request for a Hearing on December 15, 2020. Thereafter, following two continuances of the hearing requested by the parties, we held an evidentiary hearing with the parties and their counsel on March 5, 2021. The parties have submitted briefs and we are now ready to rule in this matter.

## II.    DISCUSSION

Although common law marriage has been abrogated by statute in this Commonwealth since 2005, an exception exists if a common law marriage began on or before January 1, 2005. 23 Pa.C.S.A. § 1103. Thus, following the evidentiary hearing in this matter, our analysis is focused on whether evidence exists establishing a common law marriage.

Even before it was abolished in 2005, common law marriage was generally disfavored in Pennsylvania, and a party alleging the existence of a common law marriage bears a "heavy burden." _Staudenmayer v. Staudenmayer_, 714 A.2d 1016, 1020 (Pa. 1998). When an attempt is made to establish a marriage without the

2

usual formalities, the claim must be viewed with "great scrutiny." *Estate of Carter*, 159 A.3d 970 (Super. Ct. 2017).

There are two ways in which a party can prove the existence of a common law marriage. Generally, the party alleging the common law marriage must show by clear and convincing evidence that the couple came to an "express agreement" – or *verba in praesenti* – "uttered with a view and for the purpose of establishing" the marital relationship. *Staudenmayer, at 1020-21*. Pennsylvania law also provides for a rebuttable presumption of a common law marriage that may be raised where the proponent of the marriage demonstrates (i) constant cohabitation by the parties and (ii) a reputation of marriage "which is not partial or divided but is broad and general." *Staudenmayer*, 714 A.2d at 1020-21 (citation omitted); *see also Estate of Carter*, 159 A.3d 970 (Super. Ct. 2017).

However, this rebuttable presumption is "is one of necessity to be applied only in cases ... [where there is an] inability to present direct testimony regarding the exchange of *verba in praesenti*." *Staudenmayer*, 714 A.2d at 1021 (citation omitted).

Where the parties are available to testify regarding *verba in praesenti*, the burden rests with the party claiming a common law marriage to produce clear and convincing evidence of the exchange of words in the present tense spoken with the purpose of establishing the relationship of husband and wife, in other words, the marriage contract. In those situations, the rebuttable presumption in favor of a common law marriage upon sufficient proof of constant cohabitation and reputation for marriage, does not arise. *Id* at 1021.

3

Here, following our analysis of the evidentiary record, we find Wife did not meet her burden of proving by clear and convincing evidence the existence of a common law marriage. This result follows Wife's testimony which was devoid of the exchange of words in the present tense for the purpose of establishing the relationship of husband and wife.

At the hearing in this matter, Wife was questioned by her attorney about the date on which she believed she married Husband via common law marriage, as follows:

Q: Can you tell Judge Higgins and Attorney Riegel what date you believed you married Mr. Ramlochan?
A: December 20, 1992.

Q: December 20, 1992?
A: Yes.

Q: Okay. And he proposed to you on that date?
A: Yes. He proposed and he celebrate my birthday.

Q: Well, let's see, when he proposed to you, what did he say to you?
A: He asked me if I could be his wife –

Q: Okay.
A: -- and I said, yes.

Q: And you said, yes?
A: Yes.

4

Q: And did you say, yes, to being his wife?

A: Yes.

Q: And again, the date was December 20, 1992?

A: Yes.

Q: And why do you remember that date, so specifically, besides the fact that Mr. Ramlochan asked you to marry him?

A: We celebrate my birthday.

N.T. pp. 11-12. Wife's testimony, if believed, is that at most on the date at issue Husband made a proposal to Wife to be married at some point in the future. Absent from her testimony is "the exchange of words in the present tense for the purpose of establishing the relationship of husband and wife." _Staudenmayer_, at 1021, citing _Commonwealth v. Wilson_, 543 Pa. 429, 672 A.2d 293 (Pa. 1996). As is further evident from Wife's testimony of the cited conversation, even if she herself believed at that moment she was married, there was no testimony offered to confirm the present acknowledgement of a marriage having occurred between the parties.

Moreover, Wife presented the testimony of her daughter, Amanda Maria Ramlochan, who acknowledged that her mother, being Wife, "was proposed to in 1992." See N.T. p. 49. It is also significant that Wife admitted that other than her claims to getting married to Husband on December 20, 1992 by way of common law marriage, the only other date she acknowledged marrying Husband was the date stated in her original divorce complaint, being September 10, 2015. N.T. at p. 34. Thus, no evidence was presented that what Wife described in her testimony as a

5

proposal in 1992 ever resulted in a later consummation of the proposal in the succeeding months or years thereafter.

As we find the party alleging the common law marriage, Wife, was available and provided testimony ultimately failing to provide clear and convincing evidence of an express agreement of marriage, there is no reason for the Court to further analyze whether Wife has raised a rebuttable presumption of marriage by proving constant cohabitation and a reputation of marriage which is not partial or divided but is broad and general. If a putative spouse who is able to testify and fails to prove, by clear and convincing evidence, the establishment of the marriage contract through the exchange of *verba in praesenti*, then that party has not met its "heavy" burden to prove a common law marriage, since he or she does not enjoy any presumption based on evidence of constant cohabitation and reputation of marriage. *Staudenmayer*, at 1021, citing *Pierce v. Pierce*, 355 Pa. 175, 181, 49 A.2d 346, 349 (1946).

III.    **CONCLUSION**

As Plaintiff has not met her burden of proving a common law marriage, her petition must be denied. We enter the following Order.

6